**UNITED STATES, Appellee,**

v.

**Ramberto HERNANDEZ, aka Ram, Defendant—Appellant.**

No. 95–1328.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1996.

Decided March 17, 1997.

H. Manuel Hernández, by appointment of the Court, for appellant.

José A. Quiles–Espinosa, Senior Litigation Counsel, with whom Guillermo Gil, United States Attorney, and Nelson Pérez–Sosa, Assistant United States Attorney, were on brief for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and DiCLERICO,* District Judge.

TORRUELLA, Chief Judge.

Defendant–appellant Ramberto Hernández was convicted of (1) conspiring with five other codefendants to possess with the intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846; and (2) along with three other co-defendants, aiding and abetting each other in knowingly and intentionally distributing twenty-nine kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Hernández appeals, challenging the sufficiency of the evidence and claiming that his Sixth Amendment rights to confrontation and to a fair trial were denied because the government was permitted to convict him based on the uncorroborated testimony of a single unindicted alleged coconspirator, William Negrón–Zapata ("Negrón–Zapata"), who was awaiting sentencing in another case. We affirm.

* Of the District of New Hampshire, sitting by designation.

At trial Negrón–Zapata testified as follows. He received a call from Willie Maya–Acosta ("Maya–Acosta"), inquiring whether Negrón–Zapata knew of any kilograms of cocaine available for purchase. Negrón–Zapata, in turn, contacted José Luis VélezCarrero ("Vélez–Carrero"). On October 27, 1991, Maya–Acosta delivered $290,000 to Negrón–Zapata. Later that day, Vélez–Carrero and Negrón–Zapata went to a fish market owned by appellant Hernández and delivered $261,000 to Hernández.[1] Hernández gave them twenty-nine kilograms of cocaine. Hernández was acting as an intermediary in exchange for a commission.

## I. Sufficiency of the Evidence

■ Hernández' first claim challenges the sufficiency of the evidence. In reviewing such claims, we view the evidence in the light most favorable to the prosecution and ask whether any rational factfinder could have found guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Valle*, 72 F.3d 210, 216 (1st Cir.1995).

■ It is well established that an accomplice is qualified to testify as long as any agreements he has made with the government are presented to the jury and the "judge gave complete and correct instructions detailing the special care the jury should take in assessing the testimony." *United States v. Ortiz–Arrigoitia*, 996 F.2d 436, 438–39 (1st Cir.1993). Indeed, a conviction based solely upon the uncorroborated testimony of an accomplice can be upheld, as long as the jury is properly instructed and the testimony is not incredible as a matter of law. *See United States v. Andújar*, 49 F.3d 16, 21 (1st Cir.1995). As always, the credibility of a witness is a matter for the jury. *See Ortiz–Arrigoitia*, 996 F.2d at 439.

The government's case relied on the testimony of its only witness, Negrón–Zapata. Negrón–Zapata testified that he was a longtime drug dealer, had already been convicted twice for drug trafficking, had one sentence reduced from sixty months to twenty-four months because of his willingness to testify for the government, and was still awaiting sentencing in a drug case in which he had been convicted over two and a half years prior to his testimony in the instant case. Negrón–Zapata cooperated with the prosecution in exchange for more lenient treatment and certification of his cooperation to a judge who was to sentence him after the Hernández trial. He was eventually given time served in the case for which his sentence was pending.

■ Although these circumstances raise questions of credibility regarding Negrón–Zapata's testimony, this court does not engage in a plenary review of the credibility of witnesses. A rational juror could have believed Negrón–Zapata's version of events. Negrón–Zapata testified in considerable detail regarding the crime and Hernández' role in it. Viewing the testimony in the light most favorable to the verdict, the jury could have concluded that the testimony established that Hernández joined in the conspiracy, and possessed and distributed cocaine. Negrón–Zapata was cross-examined in detail regarding both his testimony and his credibility. Finally, appellant fails to demonstrate that there existed overwhelming evidence to contradict Negrón's testimony. For all of these reasons, we deny the sufficiency of the evidence claim.

## II. The Confrontation Clause

Hernández claims that his Sixth Amendment right to cross-examine Negrón–Zapata was denied. The Sixth Amendment states that "[i]n all criminal proceedings, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment guarantees the accused the right to cross-examine government witnesses fully and fairly. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1434–35, 89

---

1. Of the original $290,000, $29,000 was divided between NegrónZapata and Vélez–Carrero as a commission.

L.Ed.2d 674 (1986); *United States v. Rivera–Santiago*, 872 F.2d 1073, 1084 (1st Cir.1989).

██ It is well established that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). "[T]he Confrontation Clause is generally satisfied when the defense is given full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.* at 22, 106 S.Ct. at 295. Furthermore, once the defendant is given the opportunity to cross-examine government witnesses, the extent of cross-examination is within the sound discretion of the trial court and we review only for abuse of discretion. *See Rivera–Santiago*, 872 F.2d at 1085.

██ In the instant case, there can be no question that Hernández was permitted a full and fair opportunity to cross-examine the witness. Indeed, the defendant fails to identify *any* circumscription imposed on his cross-examination of Negrón–Zapata, much less a restriction that would rise to the level of an abuse of discretion.[2] The defense argues that "[t]he jury was allowed to hear Negrón–Zapata's testimony unaware that he would be rewarded with a sentence of time served because of, among other things, his testimony in this case. As a result, defense counsel were denied a 'full and fair' opportunity to impeach Negrón–Zapata by showing his motivation to please the government." Appellant's Brief at 11.

In fact, the defense was afforded the opportunity to cross-examine Negrón–Zapata on every aspect of his cooperation agreement with the government. On cross-examination, Negrón–Zapata admitted that he had been awaiting sentence for twenty-nine months and that he had a cooperation agreement with the government. He testified that, in exchange for his cooperation, the government would recommend a reduced sentence in the case in which he was awaiting sentencing. In addition, the district court judge read portions of the Sentencing Guidelines to the jury to make it clear that Negrón–Zapata's sentence could be reduced below the minimum mandatory sentence in exchange for his cooperation.

██ Hernández argues that the defense could have impeached Negrón–Zapata's testimony more successfully if it had known that he would be credited for time served and released. Whether true or not, this contention does not lead to the conclusion that the right to cross-examine was compromised. At the time of the testimony, Negrón–Zapata had no assurance that he would be credited for time served and released. He only knew, as he testified, that his cooperation would be certified to the sentencing judge. In other words, the defense was permitted to present to the jury the conditions under which Negrón–Zapata was testifying. The jury was fully informed and able to assess Negrón–Zapata's credibility. We conclude, therefore, that the defense was granted a full and fair opportunity to cross-examine Negrón–Zapata.

██ Finally, we note that appellant's appeal to Rule 32(a) of the Federal Rules of Criminal Procedure,[3] the Local Rules for the District of Puerto Rico, and Sixth Amendment guarantees regarding speedy sentencing belong to the defendant awaiting sentencing, in this case Negrón–Zapata. Violation

---

**2.** We add that defense counsel did not raise the confrontation issue at trial. Arguments raised for the first time on appeal are forfeited and reversible only upon a demonstration of "plain error." *United States v. Sullivan*, 98 F.3d 686, 687 (1st Cir.1996). "The plain error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only 'particularly egregious errors,' those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted). Even if we were to conclude that there had been a violation of Hernández' right to cross-examination, appellant would have to demonstrate plain error in order to win a reversal.

**3.** Federal Rule of Criminal Procedure 32(a) requires that sentencing should take place without "undue delay."

of these rules does not give Hernández grounds for a reversal of his conviction.

### III. Jury Instructions

Finally, Hernández objects to the jury instructions. The relevant portion of the instructions is as follows:

You have also heard testimony regarding the Government's witness' reputation in the community for truthfulness or untruthfulness. In deciding this case, you should consider that evidence together with and in the same manner as all the other evidence in the case.

You have also heard testimony from an unindicted co-conspirator who has a cooperation agreement with the Government. That testimony was given in exchange for a promise by the Government that the witness will not be prosecuted for some crimes he has admittedly committed, including the ones in this case. The Government will also certify his cooperation to another judge who will sentence him in another case in the future.

In evaluating this testimony, you should consider whether that testimony may have been influenced by the Government's promise and you should consider that testimony with greater caution than that of an ordinary witness. Such agreements are legal. The only—the law only requires that you consider testimony given under those circumstances with greater caution than that of an ordinary witness.

Trial Transcript, vol. VI, at 896.

The entirety of appellant's argument with respect to the jury instructions is to quote the last two paragraphs of the above excerpt and to state that "the trial judge, in giving the legally required instruction to the jury on the care with which it must consider the testimony of an accomplice, minimized the importance of the charge by adding the word 'only.'" Appellant's Brief at 11.

▇▇▇▇▇ Because appellant failed to object to the jury instructions at trial, we review only for plain error. *See Sullivan,* 98 F.3d at 687. "Our principal focus in reviewing

jury instructions is to determine whether they tended to confuse or mislead the jury on the controlling issues." *See Service Merchandise Co. v. Boyd Corp.,* 722 F.2d 945, 950 (1st Cir.1983). We do not believe that the instructions provided by the trial judge confused or misled the jury. The judge accurately summed up the conditions under which Negrón–Zapata testified and added that jurors should "consider whether the testimony may have been influenced by the government's promise and you should consider the testimony with greater caution than that of an ordinary witness." Tr. IV, at 896. Because the jury was informed that Negrón–Zapata's testimony should be viewed with caution, we do not believe there was error in the instructions and certainly not "plain error." [4]

Although appellant's claims cannot justify a reversal in this case, we add that we find troubling certain practices brought to light in this case. In particular, we are concerned with the practice of incarcerating an individual for an extended period of time without sentencing, while holding out a promise that his or her cooperation will lead to a more lenient sentence. At least two aspects of this practice are problematic. First, although the government's offer may be attractive to an individual defendant, we do not believe that the right to prompt sentencing exists merely as a bargaining chip for defendants. It is inappropriate to hold a defendant in prison for long periods of time pending sentencing, in this case two and a half years, while the government tries to extract information from him.

The second problem is that this practice increases the likelihood that innocent individuals will be implicated by defendants trying to placate the government. This is obviously a concern whenever a defendant cooperates with the government in exchange for lenience, but we feel that as the period of incarceration increases unduly, the risk of false statements intended to appease the defendant's captors becomes too great.

---

4. We add that Hernández not only fails to point to error in the instructions, but concedes that they were "perhaps technically correct." Appellant's Brief at 12.

Although this is not the case for corrective action by this court, suffice it to say that we caution the government against abuse of this practice and that we will view with suspicion its continued use. Nothing in this opinion should be taken to support such conduct.

## IV. Conclusion

For the reasons stated herein, appellant's conviction is *affirmed.*