USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1826 UNITED STATES OF AMERICA, Appellee, v. RICHARD MARSHALL, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Lynch, Circuit Judge, _____________ Aldrich and Bownes, Senior Circuit Judges. _____________________ ____________________ Gordon D. Fox, with whom David A. Cooper and Cooper & Sanchez ______________ ________________ _________________ were on brief, for appellant. Craig N. Moore, Assistant United States Attorney, with whom ________________ Sheldon Whitehouse, United States Attorney, and Zechariah Chafee, ___________________ _________________ Assistant United States Attorney, were on brief, for appellee. ____________________ March 31, 1997 ____________________ LYNCH, Circuit Judge. The Providence police LYNCH, Circuit Judge. ______________ arrested Richard Marshall and another individual in a Rhode Island hotel room for possession of heroin with intent to distribute and conspiring to do the same. Initially, Marshall was acquitted on the conspiracy count, but the jury deadlocked on the possession with intent charge. A second trial, limited to the charge of possession with intent, resulted in a guilty verdict. Marshall was sentenced to 72 months' incarceration. Marshall argues on appeal that his conviction was brought about by a series of errors: the district court's denial of his motion to suppress, its failure to make the police produce a tape recorder and tape which may or may not have been in the hotel room, and its limitation of cross examination; a DEA agent's inconsistent testimony before the grand jury and at trial; and improper statements by the prosecutor in his closing argument. We reject these claims and affirm the conviction. The issue which merits the most discussion is the contention about the "missing evidence." I. We outline the facts only as necessary to set the framework for the issues, because Marshall does not challenge the overall sufficiency of the evidence. To the extent Marshall challenges the sufficiency of the evidence to support the trial judge's determination against him on the -2- 2 motion to suppress, the evidence is described in the light most favorable to the government. United States v. ______________ Hernandez, 1997 WL 109200, *1 (1st Cir. Mar. 17, 1997). _________ On the morning of November 30, 1994, a Providence police lieutenant received a phone call from the manager of the Day's Hotel in Providence. The manager reported that he suspected there was drug activity in Room 312 involving a Richard Marshall and explained the reasons for his suspicions. The federal Drug Enforcement Administration ("DEA") was brought into the case. The officers did a background check on Richard Marshall and came up with a criminal record and a photograph. They drove to the hotel, where the manager confirmed there had been a heavy flow of traffic in and out of Marshall's room, identified the photograph as being of Marshall, and said Marshall had listed his car as a Mercedes Benz on the hotel registration card. While the officers were in the lot looking for the Mercedes, Marshall appeared. The officers identified themselves and asked if they could speak with him. Marshall agreed, and when they said there had been complaints about the activity in his room, he said he had "his girl" in the room.  The officers asked which was his car, and Marshall pointed to a Toyota, which had a different license plate number than the one he had listed on the registration card. The officers asked permission to look in the car; Marshall -3- 3 agreed, and they searched the car but found no drugs. When asked, Marshall denied ever having been arrested, but when shown his arrest record, started to chuckle. The officers asked Marshall if he minded if they went to his room. He said he did not mind and repeated that his girl was there. They all went up to the room. Although Marshall had his room key, he knocked on the door before opening it. There was no woman in the room. There was, however, a man, Thomas Dantzler, soon to become a co- defendant. In addition, there was a paper bag protruding from between the mattress and the box springs of one of the beds. The bag contained almost 200 grams of heroin, with a street value of about $26,000. II. We address Marshall's claims seriatim. ________ Exculpatory Evidence Claim __________________________ Marshall asserts that he had a micro-cassette recorder, switched to the "on" position, in the room at the time of his arrest, that the tape captured what happened in the room both before and during the arrival of the police, and that the tape would exculpate him. It would prove exculpatory in at least two senses, he submits: it would show that he and Dantzler were in fact talking about rock concert promotions, not drug dealing, and it would tend to -4- 4 support his version of the facts -- which differs radically from the officers' version -- relevant to his Fourth Amendment claims. There is some room for skepticism: whatever his conversation with Dantzler, the drugs were in his room, and on the motion to suppress, the court found that he had consented to the officers' request to enter his room before they entered the room. Nonetheless, the government is ______ obligated to produce exculpatory evidence to a defendant. Brady v. Maryland, 373 U.S. 83 (1963). _____ ________ We set the factual stage. Marshall testified that he recorded his conversation with Dantzler about a concert they were promoting and that he left the tape recorder running when he left the hotel room to go to the parking lot. This was done, he said, to keep track of whether Dantzler used his telephone. He says the recorder would still have been running when he returned to the room and that one of the detectives picked it up and made a remark about it. The officers who were present in Marshall's hotel room tell a different story. DEA Agent Mansolillo and Detective Cross both testified that they did not see a tape recorder in the room. Detective Lauro indicated that he saw a "narrow" "electronic device" in the room, which he thought "might have been a tape recorder." Detective Lauro denied picking it up or saying anything about it. The fourth officer, Detective Gerstmeyer, though cross-examined at some -5- 5 length by defense counsel, was never asked whether he had seen a tape recorder. The officers did seize some small electronic equipment (two beepers, two portable phones, and a small calculator), but none of them remembered seizing a tape recorder. Agent Mansolillo took control of the drugs and other seized evidence, but unfortunately did not prepare an inventory. Later, both the prosecutor and defense counsel examined that evidence and did not find a tape recorder or tape. The court asked the prosecutor whether he had specifically questioned the officers on the existence of the recorder; he replied that he had not. The court requested that the prosecutor do so. The prosecutor did check, but with only two of the four officers. The court instructed the prosecutor to go back and check with the other two officers; the prosecutor failed to do so, but defense counsel did not pursue the issue any further. The judge stated that he could not require the government to produce something which it said it did not have. Defense counsel did cross-examine the officers about the tape recorder and argued the missing evidence theory to the jury. Marshall's exculpatory evidence argument has two predicates: that the recorder and tape existed and that the contents of the tape were exculpatory. His claim flounders. -6- 6 Marshall does not argue that the government did possess the tape recorder and tape and destroyed it in bad faith. Cf. Arizona v. Youngblood, 488 U.S. 51 (1988). He ___ _______ __________ does not even argue that the government removed the tape recorder and tape from the hotel room. He simply says that the recorder was there, the government agents were aware of it, the agents were the ones who seized the evidence, and the tape should have been produced. United States v. Femia, 9 F.3d 990 (1st Cir. 1993), _____________ _____ which the government cites as dispositive, does not directly address the issue here. In Femia, there was no dispute over _____ whether certain tape recordings existed; the issue was the consequences of the government's inadvertent destruction of the tapes. The government also cites United States v. Pedraza, _____________ _______ 27 F.3d 1515 (10th Cir. 1994), which is more pertinent. There the defendants claimed that a government informant had taped certain calls and that the government had failed to produce the tape recordings of the calls. Id. at 1526-27. ___ The court concluded that the defendants "have presented insufficient evidence that the government either failed to turn over 'missing tapes,' or that it destroyed them in bad faith. The fact of the matter is, [defendants] have failed to produce any convincing evidence that these tapes ever existed." Id. at 1527. The defendants' claim was based on ___ -7- 7 an equivocal statement from the informant that he attempted to record all the calls. Like the court in Pedraza, we think the defendant _______ here bore the initial burden of persuading the district court that there was reason to believe the recorder and tape existed. He did not do so. Absent a rare case in which the government may be in a better position than the defendant to disprove the existence of evidence claimed to be exculpatory, there is no unfairness in placing the burden on the defendant. It is difficult for the government to disprove the existence of something and easy for defendants to claim that something existed and was exculpatory but that the government failed to preserve it. Placing the initial burden on the defendant is also consistent with the general law in the area. Even where it is undisputed that "missing evidence" exists, it is the defendant's burden to show that the evidence is material, that is, that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. _____________ Bagley, 473 U.S. 667, 682 (1985). ______ Defendants also bear a two-part burden to show a constitutional violation when the government fails to preserve evidence on their behalf. California v. Trombetta, __________ _________ 467 U.S. 479 (1984) (breath alcohol test). The "missing -8- 8 evidence" must possess an "exculpatory value that was apparent before the evidence was destroyed" and must be "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Femia, 9 F.3d at 993. In Arizona v. ___ ___ ____ _____ _______ Youngblood, the Court imposed a third burden on a defendant __________ where the potentially exculpatory evidence has been destroyed: that of showing the government acted in bad faith in destroying the evidence. 488 U.S. at 58. Under this precedent, absent some unusual situation, the initial burden is on the defendant to show the evidence existed. That burden was not satisfied here. The related evidentiary claim that the district court improperly limited the cross-examination of Detective Lauro, as beyond the scope of direct, is without merit. Fourth Amendment Claims _______________________ Marshall makes two Fourth Amendment arguments: (1) that he did not consent to have the police enter his room, and therefore all evidence that came from the room was seized illegally, and (2) that he was under de facto arrest. Both contentions require that Marshall's version of the facts be accepted and the government's version rejected. The district court's factual determinations depended in large part on whom the court believed, as the testimony of the witnesses painted two very different scenarios. The district court disbelieved -9- 9 Marshall's version. Factual findings by the judge may not be reversed unless clearly erroneous. United States v. ______________ Cleveland, 1997 WL 61397, *7 (1st Cir. Feb. 18, 1997). There _________ can be no clear error where factual findings turn on the credibility of the witnesses who appear before the judge. United States v. Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990). _____________ ____________ Defendant having consented, there is no Fourth Amendment issue regarding the seized evidence. United States v. ______________ Zapata, 18 F.3d 971 (1st Cir. 1994).  ______ The district court also disbelieved Marshall's testimony on which he relies for the de facto arrest theory. There being no error in the finding that Marshall consented to the officers' request to enter his room, the district court's conclusion that there was no de facto arrest is hardly clear error. For the same reasons, we uphold the denial of the motion to suppress the drugs. The trial judge chose to believe the testimony of the officers, who provided a sufficient predicate. Motion to Suppress Marshall's Statements. ________________________________________ Marshall argues that the court abused its discretion in refusing to hear his motion to suppress statements he made before the drugs were found in his room. The district court found that Marshall had waived this motion by failing to make it in a timely fashion. We agree.  -10- 10 Marshall filed the motion to suppress statements two months after the date the motions were due. Marshall also did not object to the statements when they were introduced into evidence. Because Marshall failed properly to raise the issue in the district court, we do not consider it. United States v. Nunez, 19 F.3d 719 (1st Cir. 1994). We _____________ _____ add that the motion is premised on Marshall's argument that he did not give consent to enter his room and, as a result, he was in custody and should have been informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Thus, even _______ _______ had there not been waiver, the argument would have failed because the court determined the consent issue against Marshall. Grand Jury Testimony ____________________ The testimony given by DEA Agent Mansolillo varied slightly at trial from the testimony he had given before the grand jury about exactly where the bag of drugs was found and about the sequence of actions by a Providence police lieutenant who was in the room. The agent was thoroughly cross-examined on the point. It appears that this is an instance of confusion or mistake in the agent's grand jury testimony, and there is nothing in the record before us to suggest perjury. The dispute about where the drugs were found in the room was largely immaterial to the indictment: -11- 11 whether the drugs were under the mattress or not does not undermine the charge of possession with intent to distribute. Even if there were an error in the grand jury process, and we do not suggest there was one, defendant had a fair trial, and the verdict renders any error at the preliminary stage harmless now. United States v. Mechanik, ______________ ________ 475 U.S. 66, 72-73 (1986). Prosecutor's Closing Argument _____________________________ To understand Marshall's objection to the prosecutor's summation, the procedural history of the case must be recalled. This is Marshall's second trial; in the first trial, he was acquitted of a charge of conspiracy to distribute drugs. Marshall says that the prosecutor improperly accused him of a conspiracy in the face of an acquittal, that the prosecutor relied on facts not in evidence, and that the prosecutor improperly vouched for a witness. The first two points are related.  While the prosecutor never used the word "conspiracy," and never referred to the prior trial or charges, Marshall says that he did so in essence with the following argument: I submit to you that the two of them were working together and this is what happened. That the drugs were flown in from Chicago that day. . . . . -12- 12 The defendant met Dantzler, the other man who brought the drugs in from Chicago. And they set up together in that room and the plan, I submit to you, was for them, for Marshall to be the middleman for the sale of those drugs, the wholesale of those drugs to people in Providence. Marshall relies on United States v. McBride, 862 ______________ _______ F.2d 1316 (8th Cir. 1988), where the Eighth Circuit upheld the trial court's discretionary ruling awarding a new trial due to three trial errors. One of the errors involved a statement made by a prosecutor in final argument which appeared to refer to counts previously dismissed and to conflict with the evidence. Id. at 1318. Marshall's ___ argument is not frivolous, but, on balance, we think the prosecution did not exceed the bounds. The presence of Dantzler in the room and the quantity of drugs fairly support the "with intent to distribute" portion of the possession charge. The prosecutor's words suggested, we think, a permissible inference from the evidence produced at trial, and were not a reference to the conspiracy charge. The statement was within the allowable scope of argument. United ______ States v. Ovalle-Marquez, 36 F.3d 212 (1st Cir. 1994). Even ______ ______________ if the prosecutor's remarks were an improper veiled reference to the conspiracy charge, they were not sufficiently egregious to warrant a reversal of the verdict. -13- 13 The argument about improperly vouching for a witness is based on three portions of the prosecution's closing: Mr. Marshall, in effect, has said by telling the version he is saying, he, in effect, has said to you, the police are not telling you the truth. That they have come in here and taken the oath about what happened, and they haven't told you the truth under oath. . . . . They say, I submit to you, they have told the story the way it truly unfolded . . . . . . . . So, I ask you in choosing between these versions think carefully about what the police could have done if these men, Steven Cross, Detective Lauro, Detective Gerstmeyer, Detective Mansolillo had been people who would deliberately come in here and tell you the truth. Yes, you will hear undoubtedly in summation that Detective Mansolillo made a mistake in the Grand Jury. People make mistakes, and he corrected it here. All right. Defendant did not object to what he now attacks as witness vouching, and so our review in this context is for plain error. United States v. Grabiec, 96 F.3d 549, 550 (1st Cir. _____________ _______ 1996); United States v. Sepulveda, 15 F.3d 1161, 1187-88 (1st _____________ _________ Cir. 1993). These first two comments do not, we think, amount to improper vouching. United States v. Cruz-Kuilan, ______________ ___________ 75 F.3d 59, 62 (1st Cir. 1996) (holding that it is not vouching for prosecutor to say that jury should come to -14- 14 believe on the evidence that the events occurred the way the government's witnesses said they did). The last statement is simply too garbled to be vouching. We assume what the prosecutor meant to say was that the Providence police would not permit its officers to deliberately tell lies. He said, as best we can tell, the opposite. Defendant has no complaint. Even if the remarks were inappropriate, an inappropriate comment is not a reversible error unless it is likely to have affected the outcome of the trial. United States v. Cartagena- ______________ __________ Carrasquillo, 70 F.3d 706, 713 (1st Cir. 1995). These ____________ comments did not likely affect the outcome of the trial. It is an oft-heard complaint that the prosecutor is putting his personal endorsement on the scale. Of course he should not do so, but there are two sides to this. Not every factual recitation in the prosecutor's argument must start with a personal disclaimer. It is one thing to emphasize personal endorsement. It is another for the prosecutor to refer to the evidence in factual form as he goes along without constant qualification. The line, of course, may sometimes be close. But an excellent test is whether counsel contemporaneously thinks the line has been crossed, and objects, which, in turn, enables the court to instruct the jury. In the absence of such objections, plain error review -15- 15 is called for. There is no plain error here. See Grabiec, ___ _______ 96 F.3d at 550. The conviction is affirmed. ________ -16- 16