McCue v. City of Rochester, et al.   CV-94-480-M   05/13/97
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Richard G. McCue


    v.                                    Civil No. 94-480-M

City of Rochester, New Hampshire;
Chief of Police Kenneth P. Hussey;
Police Officer Paul J. Moore;
and Does 1-3


O R D E R

    Plaintiff's civil rights action has been considerably

narrowed by the court's order of September 18, 1996, granting

defendants' motion for summary judgment on most of McCue's

federal claims.  McCue's claim that Officer Moore, and other

unidentified police officers, withheld exculpatory information

from him in violation of his constitutional rights, see Brady v.

Maryland, 373 U.S. 83 (1963), survived.  In denying summary

judgment as to the Brady claim, the court noted that the parties

had not addressed the Brady materiality requirement articulated

in Kyles v. Whitley, 115 S. Ct. 1555 (1995).  Defendants now move

for summary judgment on grounds that the allegedly withheld

evidence was not material to McCue's defense.


DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The court interprets the record in the light most favorable to the nonmoving party, the plaintiff in this case, and resolves all inferences in his favor. McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Nevertheless, the plaintiff is obligated to support his claim with "more than steamy rhetoric and bare conclusions." Lawton v. State Mutual Life Assurance Co. of America, 101 F.3d 218, 223 (1st Cir. 1996). The plaintiff establishes a genuine factual dispute if "the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party" and a material fact is one that has "the potential to affect the outcome of the suit under

applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal quotations omitted). Accordingly, summary judgment will be granted only if the record shows no trialworthy factual issue and the moving party, the defendant here, is entitled to judgment as a matter of law. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).

Richard McCue was convicted on December 8, 1988, of first degree murder for killing Arlene Courchesne on October 18, 1987. His conviction was affirmed in April 1991. See State v. McCue, 134 N.H. 94 (1991). At trial, McCue's defense focused on pointing to other suspects, including Russell Healy, as the likely murderers. Healy testified at McCue's trial and denied any involvement in Courchesne's murder.

Following his conviction, McCue moved for a new trial based on newly discovered exculpatory evidence allegedly implicating Healy. McCue had obtained a statement from Elizabeth Grant in September of 1991 in which she said that Healy told her within weeks of Courchesne's death that "He [Healy] was three to four hundred dollars in the hole to [Courchesne]" and "we don't have to worry about [Courchesne] because I took care of her." Grant also stated that she contacted the Rochester police a few weeks later, before McCue's trial, and told Officer Moore about Healy's statements. Healy died in November of 1991.

3

While that motion for a new trial was pending, McCue filed a second motion for new trial on grounds of juror misconduct, which was granted. Prior to the second trial, the state moved to exclude Grant's anticipated testimony about Healy's alleged implicit confession[1] of involvement in Courchesne's death. Both Grant and Officer Moore testified at a hearing on the motion, each contradicting the other about Grant's having told the Rochester police of Healy's alleged "confession." The state trial judge ruled that testimony by Grant about Healy's alleged statements to her would be inadmissible hearsay, and did not allow it. Nevertheless, McCue's second trial in February 1993 resulted in his acquittal on all charges.

In the pending motion for summary judgment, defendants contend that because Grant's statements about Healy's "confession" were not material to McCue's defense and, therefore, even if it is assumed that Grant told Officer Moore about Healy's "confession," the information was not withheld in violation of

---

[1] Although McCue refers to Healy's alleged statement to Grant as a "confession," the statement is open to a variety of interpretations, not all of which necessarily imply Healy's complicity in Courchesne's death. Taking the facts in the light most favorable to McCue, as is necessary for purposes of this motion, the court accepts the statement as an implicit confession.

McCue's federal due process rights.[2]  See Brady, 373 U.S. at 87.
Withheld exculpatory evidence is material, in the context of a
Brady claim, "'if there is a reasonable probability that, had the
evidence been disclosed to the defense, the result of the
proceeding would have been different.'"

Kyles, 115 S. Ct. at 1565 (quoting United States v. Bagley,
473 U.S. 667, 682 (1985)(opinion of Blackmun, J.)).  Kyles
describes "reasonable probability" in light of four principles.
First, "reasonable probability" does not require a showing by a
preponderance of the evidence that the defendant would otherwise
have been acquitted.  Kyles, 115 S. Ct. at 1566.  Second,
materiality is instead determined by whether "the favorable
evidence could reasonably be taken to put the whole case in such
a different light as to undermine confidence in the verdict."
Kyles, 115 S. Ct. at 1566.  Third, the materiality standard makes
a harmless error analysis redundant.  Id.  Fourth, the effect of
withheld evidence is to be evaluated as a whole, or cumulatively,
rather than piece by piece.  Id. at 1567.

---

[2]  As noted in the September 1996 order, defendants dispute
that Grant ever contacted Officer Moore or anyone at the
Rochester Police Department about Healy's alleged "confession,"
and accordingly, argue that no evidence was ever withheld.  For
purposes of summary judgment, however, defendants proceed as if
that factual dispute does not exist.

The Supreme Court recently decided that withheld information is not material under <u>Brady</u> if it is inadmissible as evidence and would not otherwise have affected the outcome.  <u>Wood v. Bartholomew</u>, 116 S. Ct. 7, 10-11 (1995).  Grant's alleged report of Healy's "confession" is considered in light of the <u>Kyles</u> and <u>Wood</u> materiality standard.

## A. <u>Admissibility</u>

Defendants argue that Healy's alleged confessional statements to Grant[3] were not material because they lacked reliability and trustworthiness, based on the trial court's ruling that the statements, as reported by Grant, were inadmissible hearsay.  Although defendants do not expressly raise the <u>Wood</u> issue regarding materiality of inadmissible evidence, it may be fairly inferred from the arguments they do make.  McCue contends that the inadmissibility of Healy's alleged statements to Grant should not affect their materiality in the <u>Brady</u>

---

[3]  To the extent defendants challenge the reliability of <u>Grant's</u> statements (rather than the reliability of <u>Healy's</u> alleged "confession," which was the subject of the trial court's hearsay ruling), they are challenging Grant's story that she in fact reported Healy's "confession" to the Rochester police, or whether Healy in fact made the "confession."  Because that argument raises a genuine issue of material fact that would preclude summary judgment, <u>see</u> <u>supra</u>, the court construes defendants' argument to focus on the reliability of <u>Healy's</u> statements to Grant rather than on <u>Grant's</u> own credibility.

context.  However, the Supreme Court has precluded McCue's policy argument.  See Wood, 116 S. Ct. at 10-11.  In light of Wood, therefore, Grant's report of Healy's statements is not material if it would not have been admissible at McCue's first trial and would not otherwise have affected the outcome of the trial in McCue's favor.

In Wood, the Supreme Court considered whether the prosecution's failure to reveal polygraph examinations of two witnesses in a criminal case constituted a Brady violation.  The court held that because polygraph results were inadmissible under state law, either as direct evidence or for impeachment (absent a stipulation by the parties), the results were not evidence at all.  Wood, 116 S. Ct. at 10.  The Court concluded, based on the facts of the case and the defense strategy, that failure to disclose the polygraph results had no effect on the trial (mere speculation that defense counsel might have prepared differently was insufficient) so that there was no reasonable probability that the verdict would have been different if the information had been disclosed.  Id. at 11.

In this case, the asserted inadmissibility of Healy's alleged "confession," as reported by Grant, is based on the state trial court's hearsay ruling prior to the second trial rather than on state law precluding any evidentiary use of Grant's

7

statement (like the polygraph results).  Even if <u>Wood</u> were deemed to apply in such circumstances, here the state trial court's evidentiary ruling before the second trial is not determinative of the admissibility of Grant's report of Healy's statement in the context of the first trial, when Healy was alive and available to testify.  <u>Cf.</u>  <u>id.</u> at 10; <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1356 n.3 (4th Cir.) (application of state rape shield law), <u>cert. denied</u>, 117 S. Ct. 630 (1996).  Accordingly, the evidentiary ruling from the second trial does not establish the categorical inadmissibility of the statements at the first trial.

The parties have not addressed the admissibility of Grant's testimony about Healy's statements in the context of the first trial.  Although it is possible that Grant's testimony about Healy's statements would have been ruled inadmissible hearsay at the first trial, it is also at least arguable that the testimony might have been admissible on other grounds.  Withheld evidence does not have to be directly admissible to implicate <u>Brady</u> requirements, as impeachment evidence is also subject to disclosure.  <u>See</u> <u>Kyles</u>, 115 S. Ct. at 1569; <u>Giglio v. United States</u>, 405 U.S. 150, 154-55 (1972); <u>see also</u> <u>Brewer v. Marshall</u>, 941 F. Supp. 216, 230-31 (D. Mass. 1996); <u>United States v. Gonzalez</u>, 938 F. Supp. 1199, 1209 (D.Del. 1996).  In addition, undisclosed evidence does not have to have a direct effect at

trial to be material as long as some nonspeculative effect is demonstrated.  See Wood, 116 S. Ct. at 10.  Therefore, while McCue carries the ultimate burden of proving materiality, see United States v. Marshall, 109 F.3d 94, 97 (1st Cir. 1997), defendants have not carried their own initial burden on summary judgment on the Wood issue, that is, showing the absence of a genuine issue of material fact with regard to whether Grant's testimony about Healy's statements would have been inadmissible at the first trial and, if so, would otherwise have been immaterial.

## B.  "Reasonable Probability" of a Different Outcome

As the issue of admissibility has not been resolved against McCue, it must be determined whether timely disclosure of Grant's report about Healy's statements would have provided a "reasonable probability" of a different result in the context of the first trial.  At the first trial, the defense theory was that Healy, or someone other than McCue, murdered Courchesne.  Healy testified and denied any involvement in the murder, and McCue was convicted.  Though speculative on this record, still, some connection may be presumed since if Healy had confessed, McCue would likely have been acquitted.

9

McCue offers an affidavit from the attorney who represented him during both of his state criminal trials. The affidavit states that if counsel had known of Grant's story before the first trial, he would have focused McCue's defense on Healy's "confession," both by calling Grant as a witness and by questioning Healy about his statements on cross examination. Whether Grant's testimony implicating Healy in Courchesne's murder or, at least, use of that information to impeach Healy's testimony that he was not involved in the murder, would have provided a "reasonable probability" of a different result largely would have depended on the credibility of the witnesses. Credibility issues about Grant's, Healy's, and other possible witnesses' statements and testimony must be resolved by a fact-finder and cannot be decided on summary judgment, at least not on the record presented here. See Elliott v. Cheshire County, New Hampshire, 940 F.2d 7, 12 (1st Cir. 1991). Therefore, because it is apparent that a trialworthy issue remains concerning the materiality of Grant's statements, defendants are not entitled to summary judgment.

## CONCLUSION

Defendants' motion for summary judgment (document no. 17) is denied.

10

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

May 13, 1997

cc:  Andrew L. Isaac, Esq.
     William G. Scott, Esq.