USCA1 Opinion

 

 [NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT]United States Court of AppealsFor the First Circuit No. 97-2356 UNITED STATES, Plaintiff, Appellee,  v. JOSE ARIZAGA, Defendant, Appellant. APPEAL FROM THE UNITED STATES DISTRICT COURTFOR THE DISTRICT OF PUERTO RICO[Hon. Hctor M. Laffitte, U.S. District Judge] Before Boudin, Circuit Judge, Reavley, Senior Circuit Judge,and Lipez, Circuit Judge. David W. Rom n for appellant. Jos A. Quiles-Espinosa, Senior Litigation Counsel, with whom Guillermo Gil, United States Attorney, and Camille Vlez-Riv, Assistant United States Attorney, were on the brief, for appellee.March 11, 1999 LIPEZ, Circuit Judge. Jos Arizaga was convicted by ajury, after a joint trial with three co-defendants, of conspiracyto possess multiple kilograms of cocaine with intent to distribute,and of two specific instances of cocaine possession with intent todistribute, both occurring in the course of the conspiracy. Onappeal, Arizaga claims that the court erred in failing to grant anew trial in light of allegedly newly discovered exculpatoryevidence. He also argues that he was deprived of effectiveassistance of counsel at trial, and that the evidence wasinsufficient to sustain his convictions. We affirm. I. The indictment alleged that Arizaga and sixteen othernamed conspirators were involved in a series of cocainetransactions dating from November 1993 through July 1996 in whichcocaine was purchased in Puerto Rico and transported to themainland using a variety of methods. The government's case reliedprimarily on the testimony of Luis Chvere, a central figure inevery drug transaction executed in the course of the conspiracy.After being arrested in May 1995 in connection with an attemptedpurchase of ten kilograms of cocaine, Chvere subsequentlytestified as a government witness. A comprehensive description ofall the transactions in furtherance of the conspiracy may be foundin our opinion in United States v. Portela, Nos. 97-2353, 97-2354,97-2355, slip op. 3-11 (1st Cir. Feb. 9, 1999). For the purposes ofresolving Arizaga's appeal, we describe only the transactions inwhich he participated directly. "We recite the facts in the lightmost favorable to the verdicts being appealed." United States v.Shifman, 124 F.3d 31, 33 (1st Cir. 1997), cert. denied, 118 S. Ct.1053 (1998). In April 1995, Chvere traveled to Puerto Rico from hishome in Rochester, New York, in order to purchase a kilogram ofcocaine as a replacement for several kilograms of cocaine which hehad previously purchased but which had been interdicted by lawenforcement. Chvere's usual suppliers were unable to provide himwith any cocaine and indicated that the supply of cocaine wasscarce at that time. After several days, Chvere was approached byArizaga, who offered to procure a kilogram of cocaine. At somepoint afterwards Chvere purchased a kilogram of cocaine fromArizaga for $14,000. Unhappy with the quality of this cocaine,Chvere resold it in Puerto Rico instead of transporting it back tothe mainland and reselling it there, which had been his usualpractice. The evidence of this transaction produced at trialconsisted solely of the testimony of Chvere. On May 11, 1995, Victor Rold n-Flores informed Chvere ofan opportunity to purchase ten kilograms of cocaine. Since Chveredid not have enough cash to complete the transaction, he attemptedto recruit several others to provide capital and share in thepurchase. He first spoke to Arizaga, who agreed to try to recruitothers to the venture. By the morning of May 12th, Arizaga hadraised enough money to buy one kilogram of the cocaine, and Arizagaand Chvere together sought out Samuel Rivera-Maldonado, who agreedto buy two of the ten kilograms. The three of them then met Rold n-Flores, who was with William Santiago-Col¢n, and all five men wentto a Burger King in Isla Verde. Arizaga went in Rivera-Maldonado'struck, in which the pooled money of all five buyers had beenstowed. Arizaga had contributed $13,000 to the pool. Rold n-Floresrecognized his supplier driving into the parking lot of the plazawhere the Burger King was located; Rold n-Flores went out into theparking lot to speak to the supplier. Rold n-Flores then returned to the restaurant and asked Chvere and Rivera-Maldonado to go outinto the lot and get the money from the truck. The supplier was infact an undercover Drug Enforcement Administration agent, and allfive buyers were arrested. Arizaga was in the lavatory of theBurger King when he was arrested. The evidence of this transactionadduced at trial was the testimony of Chvere and of the two lawenforcement officers who had conducted surveillance inside theBurger King during the sting operation. After Chvere was released on bail, he decided tocooperate with the government. Arizaga had been released later inthe day after his arrest on May 12, 1995, but he was rearrested inJuly 1996 in light of inculpatory information provided to lawenforcement by Chvere. Arizaga was charged in three counts of theindictment. Count One charged conspiracy to possess with intent todistribute cocaine. Count Twelve charged him with possession withintent to distribute one kilogram of cocaine in connection with theApril 1995 sale to Chvere. Count Fourteen charged him withattempting to possess with intent to distribute ten kilograms ofcocaine in connection with the Burger King events in May 1995.Arizaga was convicted of all three counts in a jury trial. Shortlyafter conviction, Arizaga filed a pro se motion to dismiss histrial counsel; his counsel then requested that he be allowed towithdraw and the court granted this motion. Sentencing proceededwith new counsel (David W. Rom n), and Arizaga was sentenced toconcurrent terms of 60 and 121 months in prison followed by twoconcurrent five year terms of supervised release, and a specialmonetary assessment. This appeal followed. II. On July 21, 1997, after trial but before sentencing,Arizaga (represented by current counsel David W. Rom n) filed amotion for a new trial, based on trial counsel's allegedineffective assistance. This motion was denied by the court. OnAugust 20, 1997, Arizaga filed a renewed motion for a new trialaccompanied by a statement from Samuel Rivera-Maldonado, a co-defendant who had pled guilty. Rivera-Maldonado's statementindicates that Mr. Arizaga . . . is completely innocent of any wrongdoing in this case and had nothing to do with the criminal acts charged against him. To my knowledge, Mr. Arizaga . . . is completely innocent of the charges against him because he had nothing to do with criminal acts described in the indictment in this case.This motion was also denied by the court. Rivera-Maldonado's typedstatement is dated April 2, 1997, but the word "June" is typed onthe document, crossed out in ink, and the word "April" written byhand in its place. Federal Rule of Criminal Procedure 33 authorizes a newtrial "if required in the interest of justice." A Rule 33 motionfor a new trial based on newly discovered evidence will not beallowed unless "the movant establishes that the evidence was: (i)unknown or unavailable at the time of trial, (ii) despite duediligence, (iii) material, and (iv) likely to result in anacquittal upon retrial." United States v. Tibolt, 72 F.3d 965, 971(1st Cir. 1995). If any of these four factors are missing, "then aRule 33 motion must be denied." United States v. Natanel, 938 F.2d302, 313 (1st Cir. 1991). We review the denial of a motion for anew trial for "manifest abuse of discretion." Tibolt, 72 F.3d at972. Even assuming arguendo the unavailability of Rivera-Maldonado's statement and testimony at Arizaga's trial, the duediligence of trial counsel, and the materiality of the newevidence, we must ask whether this evidence was likely to result inacquittal on retrial. There was no such likelihood. Attempts by onedefendant to take full responsibility for a crime after his guilthas been established, or to exonerate a co-defendant, are commonand are properly viewed with skepticism. See United States v.Benavente Gomez, 921 F.2d 378, 383 (1st Cir. 1990). Rivera-Maldonado's statement is conclusory in nature and contains nothingthat might account for or seriously cast doubt upon the directlycontradictory testimony of Chvere or that of the police officerspresent at the Burger King. Under such circumstances, we concludethat the introduction of Rivera-Maldonado's testimony would nothave been likely to result in Arizaga's acquittal upon retrial. Thecourt did not abuse its discretion in denying the motion for a newtrial. III. Arizaga contends that he was deprived of the effectiveassistance of counsel because his trial counsel allegedly failed tocall Rivera-Maldonado as a witness, interview the manager of theBurger King restaurant where the arrests were made (who allegedlywould have testified that Arizaga arrived separately from the otherdefendants), present the government's videotape of the eventstaking place in the parking lot of the Burger King (so as toestablish that Arizaga was not present in the parking lot), anddiscover and present medical evidence of Arizaga's chronicgastrointestinal illness (presumably so as to establish thatArizaga was not necessarily simply hiding from the police in thelavatory). Arizaga also alleges that counsel frustrated his rightto take the stand. Ineffective assistance of counsel claims require thedefendant to show that counsel's performance was constitutionallydeficient and that the deficient performance prejudiced thedefense. Because both findings typically require the resolution offactual issues by a trial judge, we have generally declined toresolve such claims on direct appeal unless the record issufficiently developed to permit review of the claim. See UnitedStates v. Berrios, 132 F.3d 834, 840 (1st Cir. 1998). The courtissued no findings as to trial counsel's performance in rejectingArizaga's two Rule 33 motions. We have no indication of whattactical considerations may have motivated counsel's decisions notto call Rivera-Maldonado or present the videotape, nor do we haveevidence of the extent of counsel's discovery efforts. Theaffidavit of counsel in the record indicates only that counselinformed Arizaga of his right to testify. Therefore, the recordbefore us is inadequate to resolve the ineffective assistance ofcounsel claim raised by Arizaga, and we decline to address it. IV. Arizaga moved for a judgment of acquittal, pursuant toFederal Rule of Criminal Procedure 29, at the close of thegovernment's case and again at the close of all the evidence. Rule29 allows for entry of a judgment of acquittal "if the evidence isinsufficient to sustain a conviction." Arizaga argues that theevidence against him was insufficient because he "was convictedsolely on the uncorroborated accomplice testimony of Luis[Chvere], given more than a year after the events charged in theindictment." Arizaga claims the delay and the alleged lack ofcorroboration make Chvere's testimony "facially incredible" and"unbelievable as a matter of law." In assessing a sufficiencychallenge, "we review the record to determine whether the evidenceand reasonable inferences therefrom, taken as a whole and in thelight most favorable to the prosecution, would allow a rationaljury to determine beyond a reasonable doubt that the defendant wasguilty as charged." United States v. Alicea-Cardoza, 132 F.3d 1, 5(1st Cir. 1997) (internal quotation marks omitted). "[A] conviction based solely upon the uncorroboratedtestimony of an accomplice can be upheld, as long as the jury isproperly instructed and the testimony is not incredible as a matterof law." United States v. Hern ndez, 109 F.3d 13, 15 (1st Cir.1997). In this case, "[t]he judge gave complete and correctinstructions detailing the special care the jury should take inassessing the testimony," United States v. Ortiz-Arrigoitia, 996F.2d 436, 438-39 (1st Cir. 1993), and Chvere's testimony was not"incredible or insubstantial on its face," United States v. Aponte-Suarez, 905 F.2d 483, 488 (1st Cir. 1990). Chvere's testimony asto the May transaction was in fact substantially corroborated bythe testimony of the two police officers who provided surveillanceat the Burger King and participated in the arrests. Moreover,nothing about the delay between the time of Chvere's arrest andthe time at which he implicated Arizaga while cooperating with thegovernment (at most, fourteen months) made his testimony incredibleas a matter of law. A rational juror could have relied upon it tofind Arizaga guilty beyond a reasonable doubt. Affirmed.