# United States Court of Appeals
## For the First Circuit

No. 98-1766

UNITED STATES OF AMERICA,

Appellee,

v.

JAIME RIVERA ALICEA, a/k/a PITO PACHANGA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

Vilma Maria Dapena, by appointment of the court, for appellant.

Jeanette Mercado-Ríos, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco and Nelson Pérez-Sosa, Assistant United States Attorneys, were on brief, for appellee.

March 6, 2000

**SELYA, Circuit Judge.** A jury found defendant-appellant Jaime Rivera-Alicea guilty of various offenses arising out of a surveilled drug transaction and ensuing chase. Rivera-Alicea appeals, challenging the sufficiency of the evidence, the internal consistency of the verdict, the jury instructions, certain sentence-related rulings, and the denial of his motion for a new trial. Discerning no error, we affirm.

We present the facts in the light most favorable to the government, consistent with record support. See United States v. Noah, 130 F.3d 490, 493 (1st Cir. 1997). After receiving word from an informant that a large narcotics transaction was scheduled for May 23, 1996, a task force composed of federal agents and local police officers devised a plan to intercept the drugs and apprehend the participants. But as a Scottish poet warned many years ago, "[t]he best laid schemes o' mice an' men gang aft agley," Robert Burns, "To a Mouse, On Turning Up Her Nest With the Plough" (1785), and the planned interdiction imploded when the transaction occurred approximately twenty minutes ahead of schedule. Thus, only a lone Puerto Rico police officer, Eliezer De Jesús, actually witnessed the exchange.

De Jesús sounded the alarm and a cadre of law enforcement officers belatedly set out after a blue Toyota sedan that De Jesús had observed leaving the scene. Once the Toyota's

occupants — five men, including the appellant — became aware that agents were in hot pursuit, the vehicle accelerated, leading to a dangerous high-speed chase through a residential area. In the course of the chase, shots were fired from the back seat of the Toyota in what proved to be a vain attempt to deter the pursuers. Eventually, the Toyota hit another vehicle, then a gate, and ground to a stop. Officers arrested three suspects on the spot. They also recovered two firearms from the Toyota's back seat and retrieved a white nylon bag containing eighteen kilograms of cocaine from the trunk. The appellant and another man fled, exchanging gunshots with two of their pursuers, and eluded immediate capture.

In due season, a federal grand jury returned a multiple-count indictment against a number of persons. The indictment charged the appellant with aiding and abetting the possession with intent to distribute eighteen kilograms of cocaine (count 1); conspiracy to possess the same, intending to distribute (count 2); aiding and abetting the use and carriage of a firearm during and in relation to the commission of a drug-trafficking offense (count 3); and aiding and abetting the use of dangerous weapons in attempts to kill, intimidate, or interfere with law enforcement agents in the performance of their official duties (counts 4 and 5). See 21 U.S.C. §§

-4-

841(a)(1), 846; 18 U.S.C. §§ 2, 111, 924(c), 1114. After a four-day trial, the jury returned a mixed verdict; it found the appellant guilty on the first three counts, but acquitted him on the last two.

The appellant subsequently filed a timely motion for a new trial based upon newly discovered evidence. See Fed. R. Crim. P. 33. The district court denied this motion and imposed a thirty-year incarcerative sentence on the drug-trafficking counts and a five-year consecutive sentence on the firearms count. This appeal followed. In it, the appellant advances several claims of error. We address each of them.

1. **Sufficiency of the Evidence.** The appellant's principal challenge questions the sufficiency of the evidence. In reviewing for insufficiency, an appellate court must "canvass the evidence (direct and circumstantial) in the light most agreeable to the prosecution and decide whether that evidence, including all plausible inferences extractable therefrom, enables a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." Noah, 130 F.3d at 494. We follow this prescription.

The government's case against the appellant hinged on the testimony of two key witnesses. A federal agent, Montalvo, positively identified the appellant as the right-front-seat

passenger in the careening blue Toyota. He also testified that, at the time of the crash, the appellant nimbly dismounted and fled, firing a black pistol at three pursuing agents (including Montalvo). The other important witness against the appellant was José Alberto Vásquez-Hernández (Vásquez), a cooperating coconspirator. Vásquez positively identified the appellant as the principal in the operation (the buyer of the cocaine), and testified that the appellant made the necessary arrangements for the transaction at a meeting held three days prior to the exchange (in the course of which he threatened several of the other participants with dire consequences should the enterprise founder).

This testimony was more than enough to ground the jury's verdict. To be sure, the appellant, ably represented, attacks Montalvo's and Vásquez's credibility, but these attacks constitute more cry than wool. Appellate courts routinely resolve credibility issues in favor of jury verdicts, see United States v. Morillo, 158 F.3d 18, 22 (1st Cir. 1998); United States v. Winter, 663 F.2d 1120, 1127 (1st Cir. 1981), and the record here contains no principled basis for making an exception to this salutary rule. Montalvo was a percipient witness to the events of May 23, and two Puerto Rico police officers, Morales and Ortiz, although unable positively to identify the appellant,

-6-

nonetheless confirmed Montalvo's testimony in salient respects. For his part, Vásquez was a member of the ring, whose turncoat status did not strip his testimony of probative value. It is settled beyond cavil that a defendant's former cohorts may testify against him as long as all pertinent agreements with the government are disclosed and the judge, if requested, instructs the jury about the special care that must be taken in evaluating accomplice testimony.[1] See United States v. Hernandez, 109 F.3d 13, 15 (1st Cir. 1997); United States v. Ortiz-Arrigoitía, 996 F.2d 436, 438-39 (1st Cir. 1993).

The appellant makes a special entreaty in regard to Montalvo, arguing that the verdict on counts 4 and 5 evinces the jury's negative appraisal of Montalvo's testimony. We do not agree. Except in the most unusual circumstances (not extant here), credibility determinations are for the jury, not for an appellate court — and it is hazardous to attempt to intuit specific judgments about credibility from a general verdict (or from a series of general verdicts, for that matter). In all events, a jury has the prerogative to credit some parts of a

---

[1]These preconditions were fully satisfied here. The government made full disclosure; the defense vigorously cross-examined Vásquez as to promises that had been made and benefits that he hoped to derive; and the district judge gave the jurors a complete and correct explanation of the guiding legal principles.

witness's testimony and disregard other potentially contradictory portions. See United States v. Lara, 181 F.3d 183, 204 (1st Cir. 1999); United States v. O'Brien, 14 F.3d 703, 707 (1st Cir. 1994).

We see nothing to be gained by belaboring these points. Read, as need be, in the light most hospitable to the government, the record contains more than enough evidence to support the jury's determination that the appellant committed the two related drug-trafficking offenses and aided and abetted the use and carriage of one or more firearms — those transported in the Toyota and/or the one that Montalvo said the appellant fired during the foot chase — during the commission of those offenses. See United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992) (stating that the court of appeals will not disturb a jury verdict that is supported by a plausible rendition of the record).

2. **Inconsistent Verdicts.** The appellant perceives an irreconcilable tension between the guilty verdict on the firearms charge (count 3) and the acquittal on the intimidation counts (counts 4 and 5). Despite the appellant's hairsplitting, this boils down to a straightforward claim that the jury verdict is internally inconsistent. As such, the claim is essentially unreviewable. See United States v. Powell, 469 U.S. 57, 66

-8-

(1984); <u>Dunn</u> v. <u>United States</u>, 284 U.S. 390, 393-94 (1932); <u>Lara</u>, 181 F.3d at 206. In a single, multi-count trial, acquittal on one or more counts does not preclude conviction on other counts based upon the same evidence, as long as that evidence is legally sufficient to support a finding of guilt on the count(s) of conviction. <u>See</u> <u>Powell</u>, 469 U.S. at 67; <u>United States</u> v. <u>Bucuvalas</u>, 909 F.2d 593, 597 (1st Cir. 1990); <u>see</u> <u>also</u> 3 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 514 (1982 & Supp. 1999). It would serve no useful purpose to repastinate this well-ploughed ground, and we therefore reject the appellant's claim on the basis of <u>Powell</u> and its progeny, without further elaboration.[2]

**3.** **<u>Use and Carriage</u>.** The appellant contends that the lower court improperly instructed the jury on the firearms count by failing to define the terms "use" and "carry." Because the appellant did not contemporaneously object to the jury instructions on this basis, we review for plain error. <u>See</u> <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 731 (1993); <u>United States</u>

---

[2]In adopting this course, we note that there is ample evidence here to support the appellant's conviction on the firearms count. <u>See</u> <u>Muscarello</u> v. <u>United States</u>, 524 U.S. 125, 126-27 (1998) (holding that the phrase "carries a firearm" applies to persons who knowingly possess and transport firearms in a vehicle); <u>United States</u> v. <u>Bailey</u>, 516 U.S. 137, 148 (1995) (defining "use" as constituting active employment, including "brandishing, displaying, bartering, striking with, firing or attempting to fire" a gun).

v. Griffin, 818 F.2d 97, 100 (1st Cir. 1987).  This type of review entails inquiry into whether affirmance would "skew[] the fundamental fairness or basic integrity of the proceeding below in some major respect," so as to result in a miscarriage of justice.  United States v. Taylor, 54 F.3d 967, 973 (1st Cir. 1995).

We need not linger over this assignment of error. Although explicit definition of statutory terms and other legal parlance sometimes may be helpful in jury instructions, we repeatedly have held such elaboration to be unnecessary when, taken in the context of the charge as a whole and the evidence in the case, the tenor of a word or phrase is reasonably clear. See, e.g., United States v. De La Cruz, 902 F.2d 121, 123 (1st Cir. 1990); United States v. Littlefield, 840 F.2d 143, 146-47 (1st Cir. 1988).  This precept applies with especial force where, as here, the defendant makes no contemporaneous request for clarification.  In the circumstances of this case, we find no error, plain or otherwise, in the jury instructions.

4. **Sentencing.**  The appellant alleges that the lower court committed three separate errors related to sentencing.  We consider each allegation.

**A**

In computing the guideline sentencing range (GSR), the district court increased the appellant's aggregate offense level by three levels due to his role in the offense.  The appellant asserts that this enhancement was arbitrary and without underlying record support.

The government bears the burden of proving the legitimacy of an upward role-in-the-offense adjustment by a preponderance of the evidence.  See United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997) (en banc).  As we have noted, "battles over a defendant's status . . . will almost always be won or lost in the district court."  United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).  Once the sentencing judge has ruled, further inquiry proceeds deferentially; appellate review of a sentencing court's fact-specific determination of a defendant's role in the offense is limited to clear error.  See, e.g., Cruz, 120 F.3d at 3; Graciani, 61 F.3d at 75.

To justify a three-level role-in-the-offense increase, the government must show that the defendant was a manager or supervisor of criminal activity that involved five or more participants or was otherwise extensive.  See USSG §3B1.1(b).  In this instance, Judge Laffitte made detailed findings at the disposition hearing.  He attached decretory significance to Vásquez's testimony describing the appellant's behavior and

statements at a pre-transaction meeting with some of his confederates.[3] We perceive no error. The gang plainly numbered no fewer than five — after all, several witnesses testified without contradiction that five persons occupied the fleeing Toyota — and the inference that the appellant was their leader flows rationally from the evidence that he owned the drugs, that he gave orders freely, and that he was prepared to use extreme measures if anything went awry.[4]  See Cruz, 120 F.3d at 4 (holding that the sentencing judge is entitled to choose among any and all reasonable inferences that plausibly can be drawn from the record).

**B**

---

[3]Judge Laffitte stated in part:

The testimony of Jóse Alberto Vazquez clearly says that "Pito Pachanga" — that's the defendant — "arrived in a blue and grey Mustang.  He was carrying a firearm in his hand.  It was a long weapon.  When he talked to us, he asked who had the drug[s]. . . . [He then] asked for the drugs, that he wanted the drugs because he had to pay for it; that if the drugs were not recovered, he had to pay for it and that we would pay with our own lives or the lives of our families."  So that is evidently clear that he is the boss.

[4]Citing USSG §3B1.1, comment. (n.4), the appellant argues that merely characterizing an individual as the "boss" cannot support a role-in-the-offense enhancement.  Here, however, the court did not rely on a naked conclusion, but spelled out the evidence from which it determined that the appellant occupied a position of leadership in the felonious enterprise.  The fact that the court couched this determination in the vernacular does not deprive it of persuasive force.

-12-

At sentencing, the district court hiked the appellant's aggregate offense level by three levels based on the court's finding that he assaulted a law enforcement officer and thus created a substantial risk of bodily injury. See USSG §3A1.2(b).[5] The appellant challenges this enhancement, castigating what he describes as the district court's impermissible use of "acquitted" conduct to boost his offense level (and, thus, increase his eventual sentence).

The Supreme Court has stated with unmistakable clarity that "a sentencing court may consider conduct of which a defendant has been acquitted" in determining the length of a sentence. United States v. Watts, 519 U.S. 148, 154 (1997) (per curiam). We have consistently applied this principle, see, e.g., United States v. Berrios, 132 F.3d 834, 839 (1st Cir. 1998); United States v. Meade, 110 F.3d 190, 203 (1st Cir.

---

[5]This guideline reads in relevant part:

> If — during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by 3 levels.

USSG §3A1.2(b).

1997), and we are duty bound to apply it here.  Consequently, the appellant's challenge fails.

C

The appellant accuses the district court of engaging in impermissible double-counting.  In support of this accusation, the appellant notes that the court increased his offense level pursuant to USSG §3A1.2(b), see supra note 5, while at the same time invoking USSG §3C1.2 to add two levels for recklessly creating a substantial risk of bodily harm in the course of fleeing from the officers.[6]  Because the appellant failed to raise the specter of double-counting at the disposition hearing, we review this asseveration for plain error.  See United States v. Lilly, 13 F.3d 15, 18 n.6 (1st Cir. 1994) (noting the applicability of plain-error review to an unpreserved sentencing error).

At bottom, this contention posits that the sentencing court used the same conduct as the basis for both offense level increases, notwithstanding that the Sentencing Commission's commentary contains an express contrary admonition.  See USSG

---

[6]USSG §3C1.2 provides:

If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

-14-

§3C1.2, comment. (n.1) (directing courts not to apply this enhancement where, inter alia, another adjustment "results in an equivalent or greater increase in offense level solely on the basis of the same conduct") (emphasis supplied). When, and under what circumstances, double-counting may (or may not) be a permissible practice in calculating a defendant's GSR is a complicated question.[7] Here, however, we need not enter that thicket.

The district court had before it evidence of two distinct sets of facts. On the one hand, the vehicle chase culminated in the firing of shots in a public plaza. This behavior put at risk the safety of bystanders as well as law enforcement officers. This set of events was distinct from the appellant's firing of a pistol at pursuing officers while fleeing from the scene of the crash. The latter conduct, in and of itself, put others in harm's way. Each set of events independently warranted an upward adjustment under either or

---

[7]We do not mean to imply, however, that double-counting is never permissible. The contrary is true. See, e.g., Lilly, 13 F.3d at 19-20 (approving double-counting not explicitly prohibited by the sentencing guidelines); United States v. Zapata, 1 F.3d 46, 47-48 (1st Cir. 1993) (approving double-counting consistent with particular guidelines "as written"). Indeed, the Sentencing Commission has specifically endorsed the cumulative application of adjustments drawn from different guideline sections. See USSG §1B1.1, comment. (n.4); see also United States v. Rivera-Maldonado, 194 F.3d 224, 234-35 (1st Cir. 1999).

both of the guidelines at issue. The district court's discerning use of these two sets of discrete events to fashion upward adjustments under both section 3C1.2 and section 3A1.2(b) did not constitute impermissible double-counting. See United States v. Matos-Rodriguez, 188 F.3d 1300, 1312 (11th Cir. 1999); United States v. Balogun, 989 F.2d 20, 24 (1st Cir. 1993).

**5. New Trial.** The appellant's last assignment of error involves the denial of his motion for a new trial. We review such rulings for manifest abuse of discretion. See United States v. Natanel, 938 F.2d 302, 313 (1st Cir. 1991).

The appellant's trial culminated in a jury verdict on January 12, 1998. Approximately eleven weeks later, he moved for a new trial on the ground of newly discovered evidence. See Fed. R. Crim. P. 33. He premised his motion on the statement of Raquelina Mejias, an inmate at M.D.C. Guaynabo, attesting to "many" conversations with Vázquez early in 1998, during which Vázquez supposedly told her that he did not know the appellant, but that he was going to testify against him and say what the government wanted so that his sentence would be reduced. The district court weighed this proffer, envisioned no need to convene an evidentiary hearing, and denied the motion. See United States v. Rivera Alicea, Crim. No. 96-185 (HL), slip op.

-16-

(D.P.R. May 22, 1998).  We conclude that the court acted within the realm of its discretion.

In order to prevail on a motion for new trial based upon newly discovered evidence, a defendant must show that (1) the evidence was either unknown or unavailable at the time of trial; (2) the failure to unearth it was not attributable to a lack of diligence on his part; (3) the evidence is material (as opposed to being merely cumulative or impeaching); and (4) the evidence is sufficiently compelling that it would probably result in an acquittal should the court order a retrial.  See United States v. Huddleston, 194 F.3d 214, 218 (1st Cir. 1999); United States v. Slade, 980 F.2d 27, 29 (1st Cir. 1992); Natanel, 938 F.2d at 313; United States v. Wright, 625 F.2d 1017, 1019-20 (1st Cir. 1980).  In this instance, we need not go beyond the first two prongs of the test.

With only one exception, the conversations described by Mejias were alleged to have occurred prior to trial;[8] yet the

---

[8]The exception relates to a conversation in February 1998 in which Vázquez allegedly told Mejias that he had "won."  Although this piece of evidence obviously could not have been discovered in advance of trial, it does not profit the appellant.  As Judge Laffitte perspicaciously observed, even if this ambiguous remark referred to the outcome of the appellant's trial, it merely reflected Vázquez's satisfaction with the verdict and did not bear upon the appellant's guilt or innocence.  See Rivera Alicea, slip op. at 3.  Accordingly, it was not significantly probative on any material issue in the case.

appellant's motion papers said nothing about when or how he had learned of them. By the same token, the motion papers did not in any way describe what efforts (if any) the appellant had made to identify potential witnesses in preparation for trial. In short, the appellant's entreaty contained nothing that showed that the evidence on which he relied was either unknown to him before trial or, at least, was not readily discoverable had he exercised due diligence. Because the appellant offered the district court no explanation for his belated proffer of Mejias as a potential witness, he failed to carry his burden of showing that the evidence qualified as "newly discovered" within the first two prongs of the applicable test. See United States v. Falu-Gonzalez, ___ F.3d ___, ___ (1st Cir. 2000) [No. 98-1749, slip op. at 17]; United States v. Lowder, 148 F.3d 548, 552 (5th Cir. 1998); United States v. DeLuca, 137 F.3d 24, 40 (1st Cir. 1998).

The appellant has a fallback position. He asseverates that, instead of denying his motion outright, the district court should have held an evidentiary hearing to address all the issues, including knowledge and discoverability. But evidentiary hearings on motions in criminal cases are the exception, not the rule. Before either the government or a defendant can assign error to the denial of an evidentiary

-18-

hearing on such a motion, the party seeking a hearing must make "a sufficient threshold showing that material facts [are] in doubt or dispute." United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990) (collecting cases). Here, the appellant's motion did not set forth a factual predicate (even a minimal factual predicate) to ground an inference that the proffered evidence was unknown and unavailable prior to the trial. On this scanty record, we can find no abuse of discretion in the lower court's refusal to convene an evidentiary hearing. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (requiring "substantial preliminary showing" antecedent to evidentiary hearing on motion in criminal case); United States v. McAndrews, 12 F.3d 273, 280 (1st Cir. 1993) (similar).

We need go no further.[9] We have combed the record and uncovered no sign of error. For aught that appears, the appellant was fairly tried, justly convicted, and appropriately sentenced.

**Affirmed**.

---

[9]We note in passing that the district court also measured the substance of Mejias's statement and found it wanting under the third and fourth prongs of the applicable test. We do not reach those issues.