# United States Court of Appeals
## For the First Circuit

---

No. 01-1432

UNITED STATES OF AMERICA,

Appellee,

v.

SEAN LAINE,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

---

Before

Selya and Lipez, Circuit Judges,

and Singal,* District Judge.

---

Mark L. Sisti and Twomey & Sisti Law Offices on brief for appellant.
Gretchen Leah Witt, United States Attorney, and Peter E. Papps, First Assistant United States Attorney, on brief for the United States.

---

October 31, 2001

---

1

_____
*Of the District of Maine, sitting by designation.

**SELYA, Circuit Judge.** A jury found defendant-appellant Sean Laine guilty of one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Laine appeals, asserting that much of the prosecution's evidence should never have seen the light of day. Finding no compelling basis for suppression, we affirm the judgment below.

The facts are straightforward. In August of 1997, local authorities received a complaint that the appellant possessed computer image files containing child pornography. The complaint was referred to the U.S. Customs Service. An investigation ensued, but was thwarted by the death of a confidential informant.

Despite this false start, the government persevered. On March 16, 1999, a customs agent (Paul Coyman) visited the appellant's home in Walpole, New Hampshire, accompanied by a uniformed police officer (Sgt. Pelletier). We discuss the details of what transpired during that visit in the pages that follow. For now, it suffices to say that the officers knocked and asked permission to enter the dwelling; that the appellant permitted them to come inside; that he thereafter allowed them to examine his computer; and that the examination revealed image files of child pornography. A forensic review subsequently

revealed over one hundred files depicting minors engaged in sexual activity.

In due course, a federal grand jury returned a single-count indictment for possession of child pornography. See 18 U.S.C. § 2252A(a)(5)(B). The appellant moved to suppress the items found at his place of abode, including the images and other information contained in the computer. The gravamen of the motion was the appellant's claim that his consent to the officers' entry had been obtained through coercion and duress (and was, therefore, involuntary).

The district court held an evidentiary hearing on November 8, 1999. Coyman testified, and the appellant submitted an affidavit. The court reserved decision. Later, it issued a thoughtful rescript in which it made detailed factual findings, determining that the appellant had invited the officers into his residence; that, after being informed that Coyman had information that he (the appellant) had downloaded child pornography, the appellant indicated that he would cooperate; and that, after describing some of the images he had downloaded, the appellant, in response to Coyman's request, led the officers to his bedroom (where the computer was located). The court further found that the computer was "up" and that Coyman noticed in plain view an icon for a program — ACDSee — that the

appellant had mentioned as one he had used to view images. Coyman asked the appellant to click on this icon; when the appellant did so, a list of files with the extension ".jpg" appeared.[1]  At Coyman's direction, the appellant opened one of the files (which depicted children engaged in sexual activity). Coyman then secured the appellant's consent to a forensic examination of his computer and the associated diskettes.  The appellant signed a written consent form verifying this agreement.

The court acknowledged that the appellant's affidavit painted a different picture — the appellant claimed, for example, that his consent had been coerced because the officers had not allowed his father to be present for the interview and had threatened to "tear the place apart" if he denied them entry or refused to produce the diskettes containing the images — but specifically rejected the appellant's account.  In reaching this conclusion, the court found credible Coyman's explicit denial that any such conduct had occurred.  Then, "[l]ooking at the totality of the circumstances surrounding the search of [the appellant's] residence and seizure of evidence," the court determined that the appellant's "consent to search was given

_____

[1]Coyman testified that he recognized this extension as one commonly associated with image files.

voluntarily and was not the product of coercion." United States v. Laine, No. 99-075, slip op. at 7 (D.N.H. Nov. 18, 1999) (unpublished). This determination, in turn, prompted the court to deny the appellant's motion to suppress. Id. at 8.

Trial commenced on August 1, 2000. The jury found the appellant guilty as charged. The court thereafter imposed a 37-month incarcerative sentence. This appeal followed.

The appellant's cardinal claim is that the district court erred in determining that his consent was free and uncoerced. In addressing this claim, we must accept the district court's findings of fact unless those findings are shown to be clearly erroneous. United States v. Chhein, ___ F.3d ___, ___ (1st Cir. 2001) [No. 00-2230, slip op. at 6]; United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). This deferential standard of review extends to a factual finding that consent was voluntary. Chhein, ___ F.3d at ___ [slip op. at 10]; United States v. Coraine, 198 F.3d 306, 308-09 (1st Cir. 1999). In contrast, the district court's rulings of law, including the court's ultimate constitutional conclusions, are subject to plenary review. Ornelas v. United States, 517 U.S. 690, 691 (1996); Zapata, 18 F.3d at 975.

The warrant and probable cause requirements of the Fourth Amendment are not absolutes. One recognized exception is

for searches authorized by valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). When this exception is in play, the government bears the burden of showing that consent was validly obtained. Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Schaefer, 87 F.3d 562, 569 (1st Cir. 1996). This typically reduces to a question of voluntariness. That question, in turn, is likely to be factbound. See Schneckloth, 412 U.S. at 227 (noting that, in the final analysis, "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances"); Chhein, ___ F.3d at ___ [slip op. at 12] (similar); United States v. Kimball, 25 F.3d 1, 8 (1st Cir. 1994) (similar).

In support of his attack on the lower court's finding of uncoerced consent, the appellant emphasizes two points. First, he remarks — and the record bears out — that the officers never told him that he had the right to withhold his consent and deny them entry to the premises. But that fact, though relevant, is not a poison pill. While the failure to inform a suspect that he has a right to refuse consent is a factor to be weighed in determining the issue of voluntariness, such an omission does not preclude a finding that consent was voluntary.

See Schneckloth, 412 U.S. at 231, 245; Zapata, 18 F.3d at 977; United States v. Rodriguez Perez, 625 F.2d 1021, 1024 (1st Cir. 1980).

Here, the district court noted the omission but found that, under all the circumstances, the appellant's consent was nonetheless voluntary. The only real question for appellate review is whether the evidence presented at the suppression hearing fairly supports this finding. On this conflicted record, the truthfulness vel non of the witnesses necessarily comprises an important ingredient of any reasoned response to that question. Because an appellate tribunal must defer to the trial court's judgment as to witness credibility, see United States v. Patrone, 948 F.2d 813, 816 (1st Cir. 1991), we have no principled choice but to uphold the voluntariness finding. We explain briefly.

The testimony established that the appellant was in his own home, with the officers outside on the doorstep, when the question of consent was broached. It was early in the evening. The officers had knocked and identified themselves (indeed, one was in uniform), and, as the district court supportably found, they had told the appellant that they wanted to discuss something that he probably would not want to talk about in public. No weapons were brandished and, according to testimony

explicitly credited by the district court, no threats were uttered.

In fine, there is nothing in the record to show that the environment was inherently coercive or that the appellant was in a particularly vulnerable position. By like token, no credible evidence exists that the officers menaced the appellant, pressured him, or resorted to trickery to gain admittance.[2] To cinch matters, the appellant expressly invited the officers to enter the dwelling and opened the door. This dual manifestation of consent — in both words and deed — speaks tellingly about the voluntariness of the appellant's consent. See Zapata, 18 F.3d at 977 (discussing probative force of "evidence of express consent, along with evidence of consent inferable from conduct").

In most cases — and especially those in which the subsidiary facts are contested — the battle over the voluntariness of an individual's consent will be won or lost in the trial court. So it is here: the district judge plainly understood his role, sifted the evidence thoroughly, found the facts with care, and weighed them in the balance. It is no

---

[2]As previously noted, the district court was free to accept Coyman's version of the critical events and reject as incredible the contrary portions of the appellant's affidavit. See Rodriguez Perez, 625 F.2d at 1024.

consolation to the appellant that a different factfinder, viewing the same evidence, might have reached the opposite conclusion. Where the evidence supports two plausible but conflicting inferences, the factfinder's choice between them cannot be clearly erroneous. See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990); United States v. Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990).

The appellant has a fallback position. Citing Johnson v. United States, 333 U.S. 10, 17 (1948), he asseverates that he did not consent to the officers' entry, but, rather, merely submitted to a lawful claim of authority. That asseveration is doubly flawed. First, the appellant never made this argument in the district court, and, consequently, he cannot make it here. See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987) (collecting cases).

In all events, even if we were disposed to overlook this procedural default — and we see no basis for doing so — the asseveration fails on the facts. The officers here did not demand to be admitted to the appellant's abode, nor did the lower court rely on silent acquiescence to the officers' entry

as a proxy for consent.  Rather, Coyman suggested that he wished to discuss something with the appellant that the appellant might prefer to keep private, and the appellant thereupon chose to invite the officers into his home.  Given those facts, <u>Johnson</u> is inapposite.

There is one final point.  In closing, the appellant makes a largely undeveloped argument that the "plain view" doctrine, <u>see</u> <u>United States</u> v. <u>Rutkowski</u>, 877 F.2d 139, 140-142 (1989), does not support the search and subsequent seizure of his computer.  This challenge need not detain us.  The district court did not rely on the "plain view" doctrine in concluding that the search passed muster under the Fourth Amendment, but, rather, explicitly found that the appellant had consented to the search in its various permutations.  This finding depends largely upon Coyman's testimony, and the district court carefully examined the inconsistencies between the two versions of what had occurred before deeming Coyman's account worthy of credence.  Since this credibility determination was comfortably within the proper province of the district court, we decline to disturb it.

We need go no further.  The appellant, ably represented by seasoned counsel, has made a heroic effort to put matters in a flattering light.  But he is fishing in an empty stream.  At

bottom, his argument is a thinly veiled attempt to relitigate credibility judgments and other fact-sensitive determinations that the district court resolved adversely to him.  Because the court's findings are fully supportable, there is no cognizable basis for reversing the denial of the suppression motion.

**Affirmed**.