# United States Court of Appeals
## For the First Circuit

No. 02-2377

UNITED STATES OF AMERICA,
Appellee,

v.

NELSON J. DEL ROSARIO,
Defendant, Appellant.

No. 03-1006

UNITED STATES OF AMERICA,
Appellee,

v.

PEDRO PACHECO,
Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

[Hon. Aida M. Delgado-Colón, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Schwarzer,* Senior District Judge.

_____
*Of the Northern District of California, sitting by designation.

Mauricio Hernandez Arroyo, by appointment of the court, on brief for appellant Del Rosario.

Rafael Anglada-Lopez, by appointment of the court, on brief for appellant Pacheco.

H.S. Garcia, United States Attorney, Sonia I. Torres-Pabón and Nelson Pérez-Sosa, Assistant United States Attorneys, on brief for appellee.

November 1, 2004

**SELYA**, **Circuit Judge**.  A federal grand jury sitting in the District of Puerto Rico indicted defendants-appellants Nelson J. Del Rosario and Pedro Pacheco, along with a third man, Miguel Pérez, on charges of conspiring to distribute controlled substances.  See 21 U.S.C. §§ 841(a), 846.  The operative bill — the superseding indictment handed up on May 2, 2001 — also charged Del Rosario with two counts of possession of large quantities of cocaine and heroin, respectively, with intent to distribute the same.  See id. § 841(a)(1).  Pérez disappeared after posting bail and is still a fugitive.  Del Rosario and Pacheco maintained their innocence.

At a joint trial, a jury found the appellants guilty as charged.  The district court sentenced Del Rosario to a 151-month incarcerative term and Pacheco to a 235-month incarcerative term.  In these appeals, both men claim that the government failed to present sufficient evidence to ground their convictions.  Each man also challenges a different evidentiary ruling.  Finally, Pacheco questions the constitutionality of his sentence.  Finding their arguments unpersuasive, we affirm.

## I.  BACKGROUND

We first trace the anatomy of the government's case and then describe the trial.

-3-

## A. **The Facts**.

In reviewing challenges to the sufficiency of the evidence in criminal cases, we take the trial record in the light most favorable to the government. See United States v. Maraj, 947 F.2d 520, 522 (1st Cir. 1991). Viewing the evidence in that light, the jury could have found the following facts.

On July 29, 2000, an unnamed informant told the Drug Enforcement Administration (DEA) about drug-trafficking activity allegedly taking place in the American Airlines terminal at the international airport that serves San Juan, Puerto Rico. DEA agents placed the terminal under surveillance. Two agents stationed outside the building watched as Del Rosario and two companions (Charlie James and Leonardo Ramírez) entered the terminal through a secured-access door reserved for airline personnel. Each man was pulling a suitcase on rollers. The agents alerted colleagues stationed inside the terminal, who then apprehended the trio as they separately approached a gate at which a New York-bound flight waited. Ramírez consented to a search of his suitcase. That search revealed several individually wrapped packages of what appeared to be narcotics.

At that point, the DEA agents arrested all three men, escorted them to the DEA's airport office, and conducted consensual searches of James's and Del Rosario's luggage. Each suitcase was found to contain bundles similar to those previously found in

Ramírez's roll-along baggage. Laboratory tests later showed that all three suitcases were laden with drugs. Del Rosario's held approximately twenty kilograms of cocaine and one and one-half kilograms of heroin.

The agents also found a few other items of interest. On Del Rosario's person, they discovered a printed itinerary for an unconsummated return trip to New York. From James, they seized a prepaid cellular phone and an unused airline ticket for the waiting San Juan to New York flight. A search of Ramírez's person revealed a similar ticket. These items were introduced into evidence at the trial.

Shortly before the threesome entered the terminal, their associates, Pacheco and Pérez, had stationed themselves inside as lookouts. When they saw the agents swoop down upon their cohorts, Pacheco and Pérez lost no time in boarding the flight to New York. Ramírez provided the agents with descriptions of the two men and identified them as the owners of the contraband. DEA agents in New York arrested Pacheco and Pérez upon their debarkation and seized prepaid cellular phones from each of them.

With this brief introduction, we turn to the trial itself. Additional facts will be revealed both in the course of that discussion and in the ensuing analysis of the assignments of error.

## B. **The Trial**.

Ramírez pleaded guilty to a felony drug offense and became a government witness. At the appellants' trial, he testified that Del Rosario initially had recruited him to participate in a scheme to ferry drugs from San Juan to New York. At a meeting in New York on July 21, 2000, Del Rosario introduced Ramírez to Pacheco and the three men discussed compensation issues. The next day, they left for Puerto Rico to retrieve a shipment of drugs. That trip proved to be a washout and the would-be traffickers agreed to return the following weekend to consummate the transaction.

The threesome flew back to New York and, in furtherance of their agreement, returned to San Juan on July 28. They met with Pérez that same day. The next day, Pérez and James drove the group to the airport. Pérez instructed Ramírez to take a suitcase from the van, wait for Del Rosario and James, and follow them through the secured door into the terminal. Ramírez did as he was told. When James appeared, Ramírez overheard him talking on a cellular phone, relaying the group's location to another party. The government later entered into evidence the call logs from prepaid cellular phones ostensibly seized from Pacheco, James, and Pérez. These logs showed that the cellular phones seized from Pacheco and James were constantly communicating with each other on the day of the arrests. The last call between the two was logged at 8:53 p.m.

(roughly the time that the DEA agents observed Del Rosario, James, and Ramírez entering the terminal).

The jury also heard testimony from an American Airlines ticket agent attesting to airline reservations that had been made in the names of each of the five participants in the scheme. The agent related that the tickets assigned to Pacheco, Del Rosario, James, and Ramírez on the July 29 San Juan to New York flight were bought at a single New York travel agency and were numbered sequentially. This tended to confirm Ramírez's testimony that Pacheco personally had booked the group's air travel and had underwritten its cost.

After the government completed its case in chief, both defendants moved for judgments of acquittal based on the alleged insufficiency of the evidence. See Fed. R. Crim. P. 29(a). The district court denied these motions. The appellants proceeded to introduce evidence in their own defense. They did not renew their Rule 29 motions once they had rested. The court's charge, the verdict, and the imposition of sentences followed, as did these appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Under ordinary circumstances, we review the grant or denial of motions for judgment of acquittal de novo. United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998). Here, however, the circumstances are not ordinary. "A defendant who elects to adduce

evidence in [his] defense after the district court has denied a Rule 29 motion made at the close of the government's case is deemed to have abandoned the earlier motion and waived any objection to its denial." United States v. Amparo, 961 F.2d 288, 290 (1st Cir. 1992). So it is here: the appellants' failure to renew their earlier motions for judgment of acquittal after presenting evidence pretermits the usual de novo review. See United States v. Hadfield, 918 F.2d 987, 996 (1st Cir. 1990). Instead, we inquire into the evidentiary sufficiency of the government's case only to ensure against clear and gross injustice. United States v. Stein, 233 F.3d 6, 20 (1st Cir. 2000); Hadfield, 918 F.2d at 996. We find no hint of injustice here.

The conspiracy statute under which the appellants were convicted provides that "[a]ny person who attempts or conspires to commit any [federal drug] offense . . . shall be subject to the same penalties as those prescribed for the offense." 21 U.S.C. § 846. To ground a conviction under this statute, the government must "show beyond a reasonable doubt that a conspiracy existed and that a defendant agreed to participate in it, intending to commit the underlying substantive offense." United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993). The government may meet its burden of proof by direct evidence, circumstantial evidence, or any combination of the two. United States v. Marrero-Ortiz, 160 F.3d 768, 772 (1st Cir. 1998). "[B]oth the conspiracy's existence and

a particular defendant's participation in it may be inferred from the members' words and actions and the interdependence of activities and persons involved." United States v. Ortiz de Jesus, 230 F.3d 1, 5 (1st Cir. 2000) (quoting United States v. Boylan, 898 F.2d 230, 241-42 (1st Cir. 1990)).

We need not tarry. In this case, the testimony of Ramírez points directly to the existence of an express agreement among a band of coconspirators that included both appellants. He met face to face with Del Rosario and Pacheco, directly implicated them in the drug-trafficking scheme, and detailed their participation (citing book and verse). Ramírez's testimony alone is adequate to sustain the conspiracy convictions. See, e.g., United States v. Martínez-Medina, 279 F.3d 105, 115 (1st Cir. 2002) (explaining that uncorroborated testimony of a government informant is sufficient for conviction if the testimony "is not incredible or insubstantial on its face") (citation and internal quotation marks omitted); see also Ortiz de Jesus, 230 F.3d at 6.

In an endeavor to parry this thrust, Pacheco charges that Ramírez's testimony was unworthy of credence and compromised by inconsistencies. This charge overlooks that judgments as to a witness's veracity (or lack of veracity) ordinarily are for the jury, not for an appellate court. See, e.g., United States v. Franky-Ortiz, 230 F.3d 405, 407 (1st Cir. 2000); United States v. O'Brien, 14 F.3d 703, 707 (1st Cir. 1994). The jury is free to

credit or discount testimony depending upon its collective evaluation of a witness's credibility. O'Brien, 14 F.3d at 707. And, similarly, the existence and effect of any inconsistencies are grist for the jury's mill. See, e.g., United States v. Carroll, 105 F.3d 740, 743 (1st Cir. 1997); United States v. Romero, 32 F.3d 641, 646 (1st Cir. 1994).

In this instance, Pacheco's trial counsel ably cross-examined Ramírez and forcefully attacked the latter's credibility during closing argument. The jurors saw and heard the witness and were at liberty to make their own informed assessment of his truthfulness. For present purposes, it is conclusive that the jury apparently accepted Ramírez's account. See United States v. Alicea, 205 F.3d 480, 483 (1st Cir. 2000) (explaining that "a jury has the prerogative to credit some parts of a witness's testimony and disregard other potentially contradictory portions").

To be sure, the appellants note that Ramírez was hip-deep in the plot and emphasize the inherent unreliability of accomplice testimony. But that too was for the jury. It would revolutionize the trial of criminal cases if the turncoat status of a cooperating witness was enough to strip his testimony of probative value as a matter of law. There is no such rule. See id.

In addition to challenging his conspiracy conviction, Del Rosario also challenges his convictions on the two substantive counts. Those counts, charging possession with intent to

distribute, arise out of the same nucleus of operative facts: the July 29 airport incident. The first of them (count 2) charged that Del Rosario, at that time and place, knowingly possessed five or more kilograms of cocaine with intent to distribute. The second (count 3) charged that, at the same time and place, he knowingly possessed one or more kilograms of heroin with intent to distribute.

Del Rosario initially argues that the government never proved that he possessed either the cocaine or the heroin. This is sheer persiflage. For purposes of the statute of conviction, 21 U.S.C. § 841(a)(1), possession may be either actual or constructive. United States v. Bergodere, 40 F.3d 512, 518 (1st Cir. 1994). Actual possession is "the state of immediate, hands-on physical possession." United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994). Constructive possession "exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Ocampo-Guarin, 968 F.2d 1406, 1409 (1st Cir. 1992) (citation and internal quotation marks omitted). In a drug case, constructive possession "may be inferred from a defendant's dominion and control over an area where narcotics are found." United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993).

-11-

In this case, the evidence shows that Del Rosario, having accepted an assignment to transport drugs from San Juan to New York, removed a suitcase (later found to contain narcotics) from the back of a van and wheeled it through a restricted-access airport door. He was seen straddling this suitcase with his legs as he awaited a boarding call for his New York flight. These facts are capable of supporting an inference of either actual or constructive possession.

Del Rosario's claim that the government failed to establish his intent to distribute cocaine and heroin is equally unavailing. On this record, the illation that he knew this suitcase was packed with narcotics was an easy (and wholly reasonable) one for jurors to draw. Del Rosario's claim to the contrary ignores, among other things, the axiomatic principle that "an intent to distribute drugs can legitimately be inferred from factors such as quantity and purity." Id.

To illustrate, the DEA agents found twenty-one packages in Del Rosario's suitcase. One distinctively wrapped parcel was tested separately and found to contain between 665 and 690 grams of heroin (the record does not contain any information as to its purity). When the DEA tested the twenty remaining packages, one of them was shown to contain 787 grams of heroin, 71% pure. The other nineteen parcels contained, in the ensemble, 19.89 kilograms of

cocaine, 79% pure.[1]  The large quantity of contraband found in Del Rosario's possession warrants the inferences that he knew the drugs would be released into the stream of commerce and that he intended to facilitate that action.  See United States v. Smith, 680 F.2d 255, 260 (1st Cir. 1982) ("Neither juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings.").

That ends this aspect of the matter.  The evidence presented at trial was more than sufficient to sustain the appellants' convictions.

## III. EVIDENTIARY RULINGS

The appellants variously assign error to two evidentiary rulings.  We discuss them separately.

### A.  The Cellular Phone.

Pacheco complains that the government never proved that he was in possession of the cellular phone used to converse with James on July 29.  His plaint focuses on the lack of foundation for references to the phone that were made at trial by Brian Geraghty, a DEA agent.  We set the stage.

---

[1]Ramírez's and James's suitcases contained, respectively, 18.9 and 19.88 kilograms of 80% pure cocaine.

The record reflects that a cellular phone was taken from Pacheco in New York. Geraghty, however, was in San Juan at the time. He later participated in the receipt and processing of a cellular phone at the DEA's San Juan office. He was told that the phone was Pacheco's and he inventoried it as such. However, he had no personal knowledge of that fact. The agent who seized the phone did not testify, and there was no first-hand evidence as to how the phone traversed the miles from New York to San Juan.

During Geraghty's trial testimony, he alluded to a "telephone that was taken from Mr. Pacheco." This reference occurred despite the absence of any foundational evidence, to that point, that a phone had been seized when Pacheco was detained. The allusion inspired a vaguely phrased objection, to which the district court responded that Pacheco's counsel "need[ed] to bring that up outside of the hearing of the jury." Pacheco's counsel never followed through on this suggestion.

Geraghty essayed several other references to the cellular phone. On one of these occasions, Pacheco's counsel began to state an objection. The district court cut her off in mid-sentence.[2]

---

[2]The colloquy between the lawyer and the judge was as follows:

MS. APONTE: The objection was that the witness [Geraghty] was with Mr. Pacheco when the telephone was occupied. So if he is testifying as to something he was outside of the presence —

THE COURT: Overruled. The jury heard the circumstance in which the telephone was seized. They heard it today,

-14-

Pacheco now asks us to review the admissibility of the agent's statement that the phone was seized from his person.

There is a serious question as to the applicable standard of review. Two difficulties are apparent. First, the court invited defense counsel to take the matter up outside the jury's earshot, and the record does not reflect that counsel ever did so.[3] Cf. Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 224 n.2 (1st Cir. 1996) (stating that an appellant who declines the court's invitation to seek modification of an order waives the issue for purposes of appeal). This likely was a waiver. The

_____

as a matter of fact —

MS. APONTE:  Your Honor.

THE COURT:  — so the jury can deal with that.  You can argue your case at an appropriate time in front of the jury.  This is not closing argument.  We are just receiving evidence.

In his brief, Pacheco indicates that the phrase "the witness was with Mr. Pacheco" should read "the witness was not with Mr. Pacheco" (emphasis supplied).  It is unclear whether the absence of the word "not" was caused by misspeaking or by mistranscription. In all events, Pacheco is bound by the transcript as it stands, as he never requested the district court to correct the phrasing. See Fed. R. App. P. 10(e)(1) (explaining that disputes arising over the accuracy of the trial record ordinarily must be submitted to and settled by the district court).

[3]In his briefing, Pacheco claims that the trial judge spontaneously withdrew the invitation and overruled the objection before a sidebar conference could take place.  The record, however, is silent in this regard — and it is a party's affirmative responsibility to "furnish the court of appeals with so much of the record of the proceedings below as is necessary to enable informed appellate review."  Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999).

-15-

second obstacle is that a party objecting to particular evidence is obliged to make "a timely objection or motion to strike . . . stating the specific ground of objection," at least where that ground was not apparent from the context. Fed. R. Evid. 103(a)(1). The purpose behind this rule is to ensure that a litigant will "call his specific objection to the attention of the trial judge, so as to alert the judge to the proper course of action." United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994) (citation, internal quotation marks, and brackets omitted). Should either of these obstacles prove insuperable, review would be limited to plain error.

Here, however, there are some mitigating factors. Chief among them is the trial judge's interruption of the lawyer as she was apparently attempting to state the grounds for her objection. That might suffice to excuse the procedural default. Cf. United States v. Toribio-Lugo, 376 F.3d 33, 41 (1st Cir. 2004) ("A lawyer ought not to be required to persist stubbornly when the judge has made it perfectly clear that he does not wish to hear what the lawyer has to say.").

In the final analysis, we need not probe too deeply into whether Pacheco preserved the point. Here, all roads lead to Rome: whatever the standard of review, the error was harmless.

The error itself is manifest. Geraghty's only knowledge of the phone's provenance was second-hand. The agent who seized it

did not testify, and the government never established a chain of custody tracing the phone from Pacheco's carryall to Geraghty's hands.  See United States v. Ladd, 885 F.2d 954, 956-57 (1st Cir. 1989) (describing chain of custody requirements).  We conclude, therefore, that there was no sound basis for admitting the references linking Pacheco to the cellular phone.

Notwithstanding the fact that the government used the phone and the call logs emanating from it to show communication between Pacheco and James on the day of the arrest, this error was harmless.  "Where, as here, an error is not of constitutional magnitude, reversal is not obligatory unless the bevue 'affect[s] substantial rights.'"  Id. at 957 (quoting Fed. R. Crim. P. 52(a)). In determining whether an error affects substantial rights, we ask whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946).  The Kotteakos "fair assurance" standard requires a substantial degree of probability, but it does not require that the error be shown to be harmless beyond any reasonable doubt.  See Ladd, 885 F.2d at 957.

In applying the Kotteakos test, a reviewing court must engage in "a panoramic, case-specific inquiry considering, among other things, the centrality of the tainted material, its

uniqueness, its prejudicial impact, the uses to which it was put during the trial, the relative strengths of the parties' cases, and any telltales that furnish clues to the likelihood that the error affected the factfinder's resolution of a material issue." Sepulveda, 15 F.3d at 1182. The error of which Pacheco complains is analogous to the one that we found harmless in Ladd.

First, the point that the government sought to prove by introducing the cell phone evidence — that Pacheco was in communication with the men carrying the drugs — had been established by other evidence before Geraghty took the stand. And there was more. The jury heard from Ramírez that Pacheco had facilitated the group's air travel to and from Puerto Rico and had explained the financial terms of the drug deal to the recruits. Then, too, the supervisor of the DEA surveillance team testified that Pacheco was in the terminal at the time of the incident, acting in a manner that suggested countersurveillance. Last — but far from least — the consecutively numbered airline tickets paid for by Pacheco and issued in his and his cohorts' names were a powerful indicium of his pivotal role in the plot. Because the proof of Pacheco's culpability was abundant and the probative value of the cell phone testimony, in itself, was modest, we think it highly unlikely that the exclusion of that testimony would have influenced the jury's verdict. See United States v. Piper, 298

F.3d 47, 58 (1st Cir. 2002) (explaining that evidence deemed "cumulative" is generally thought to be harmless).

The second point of similarity with the Ladd analysis is the effect of the challenged testimony on the defendant's trial strategy. See Ladd, 885 F.2d at 958. Pacheco's defense at trial consisted of an alibi: the testimony of two nieces who claimed that he had remained in Puerto Rico between July 23 and July 29. That testimony, if believed, would have contradicted Ramírez's testimony that Pacheco repaired to New York during that interval, made the necessary arrangements for the pickup, and returned to Puerto Rico on July 28 with his "mules." The impermissible references to the use of the cell phone in Puerto Rico on July 29, however, are not in any way inconsistent with Pacheco's alibi defense and therefore could have no bearing on it. This lack of centrality supports a finding of harmlessness.

For these reasons, we conclude that, whatever the standard of review, the lower court's admission of the cell phone testimony constituted harmless error.

### B. **The Search of the Suitcase**.

In an attempt to remove the most incriminating piece of evidence from the mix, Del Rosario challenges the district court's denial of his motion to suppress the contents of the suitcase.[4]

---

[4]The district judge originally sent the motion to suppress to a magistrate judge. See 28 U.S.C. § 636(b)(1)(B). The magistrate judge held an evidentiary hearing and recommended denial of the

-19-

Del Rosario trains his fire on the district court's determination that the DEA agents secured Del Rosario's valid consent to conduct the search. As framed, this argument calls into question the court's subsidiary findings of fact. We review these findings for clear error, see United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994), while affording plenary review to the district court's ultimate constitutional conclusion that Del Rosario's rights were not violated, see United States v. Laine, 270 F.3d 71, 74 (1st Cir. 2003).

Two witnesses appeared at the suppression hearing: Del Rosario and DEA supervisor Elvin Laboy. They offered differing accounts of the events that took place inside the DEA's airport office. Laboy testified that Del Rosario admitted ownership of the suitcase and freely consented to a search of it.[5] Del Rosario

_____

motion. Del Rosario then filed a timely objection to the magistrate judge's report. The district judge overruled this objection and adopted the magistrate's reasoning. For simplicity's sake, we do not distinguish between the two judicial officers, but, rather, take an institutional view and refer to the determinations below as those of the district court. See, e.g., United States v. Maldonado, 356 F.3d 130, 134 n.1 (1st Cir. 2004).

[5]Although his brief is unclear on the point, Del Rosario appears to be making a poorly developed argument that Laboy's testimony included hearsay and, thus, should not have been considered. That argument is hopeless. For one thing, Del Rosario made no contemporaneous objection to the testimony. See United States v. Saccoccia, 58 F.3d 754, 773 (1st Cir. 1995) (explaining that an appellant's burden increases substantially when he has failed to advance a contemporaneous objection). For another thing, testimony given at a suppression hearing is not subject to the usual proscriptions against hearsay evidence. See Fed. R. Evid. 104(a); see also United States v. Schaefer, 87 F.3d 562, 570 (1st

testified that Laboy was not even present when the suitcase was opened and that he never consented to a search.

Weighing the two sharply conflicting narratives, the district court found Laboy truthful and rejected Del Rosario's version. Since Laboy's testimony is plausible on its face and not inconsistent with the other information that is known about the events in question,[6] the district court's finding demands our respect. See United States v. Weidul, 325 F.3d 50, 53 (1st Cir. 2003) (explaining that "a district court's choice between two plausible competing interpretations of the facts cannot be clearly erroneous"); Jackson v. United States, 156 F.3d 230, 232-33 (1st Cir. 1998) (similar).

As a fallback, Del Rosario offers an alternative argument. He suggests that any consent he might have given was tainted by coercion. That is whistling past the graveyard. A nisi prius court's determination that consent was voluntary is a factual finding, not a legal one, and thus is reviewed only for clear error. Laine, 270 F.3d at 75. "The only real question for

_____

Cir. 1996).

[6]We reject Del Rosario's complaint that Laboy's testimony at the suppression hearing contradicts a DEA record indicating that Agent Douglas Furlough was the person who requested the consent. At trial, Furlough testified that both he and Laboy had participated in Del Rosario's initial interview, and that Laboy was the one who had requested consent to open the suitcase. Moreover, the agent who had prepared the original record explained that his statement was based on a faulty assumption.

-21-

appellate review is whether the evidence presented at the suppression hearing fairly supports this finding." Id. The answer here is unequivocally in the affirmative.

To be sure, Del Rosario marshals other "facts" in support of his coercion argument. But these "facts" derive from his own uncorroborated testimony at the suppression hearing. The district court declined to credit that testimony, and Laboy's testimony, unimpeached on cross-examination, suggests that Del Rosario answered "yes" when asked for a "simple yes or no" answer as to whether he would consent to an opening of the bag. Given the district court's express adoption of Laboy's testimony and its equally explicit rejection of Del Rosario's account, we discern no clear error in the determination that the necessary consent was elicited voluntarily. See id.

At the risk of belaboring the obvious, a supportable finding of consent eliminates the need for either a search warrant or probable cause. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Woodrum, 202 F.3d 1, 6 (1st Cir. 2000). Given the bulletproof determination that Del Rosario voluntarily consented to the search, the district court's legal ruling that the evidence was not obtained in violation of the Fourth Amendment is unimpugnable.

-22-

## IV.  SENTENCING

Our journey is not yet at an end.  Having received a 235-month prison sentence under the relevant provisions of the United States Sentencing Guidelines, Pacheco now invites this court, in a supplemental post-argument brief, to set aside his sentence on the basis of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004).  We decline the invitation.

Blakely examined the constitutionality of a Washington state sentencing scheme.  After the defendant pleaded guilty to kidnaping, the nisi prius court imposed a sentence above the statutory maximum based on a finding of "deliberate cruelty."  Id. at 2535.  The Supreme Court noted that this finding was "neither admitted by [the defendant] nor found by a jury," id. at 2537, and declared the augmented sentence violative of Blakely's Sixth Amendment right to trial by jury, id. at 2538.  While the Court made clear that the federal sentencing guidelines were not before it and expressed no opinion on their validity, id. at 2538 n.9, the rationale of Blakely calls into doubt their constitutionality.  The Supreme Court has taken this precise question under advisement. See United States v. Booker, No. 04-104 (argued Oct. 4, 2004); United States v. Fanfan, No. 04-105 (argued Oct. 4, 2004).

In Pacheco's case, the sentencing court determined, inter alia, that he was an "organizer" of the conspiracy, and hiked his offense level accordingly.  See USSG §3B1.1(c).  The increase in

-23-

the offense level yielded an elevated guideline sentencing range and, thus, led to a stiffer sentence. Invoking <u>Blakely</u>, Pacheco now attempts for the first time to challenge this upward adjustment. He posits that the crucial fact on which the adjustment depends — his role in the offense of conviction — was neither determined by the jury nor established beyond a reasonable doubt.[7]

The most fundamental flaw in the fabric of this argument is that Pacheco failed to advance it in the district court.[8] That flaw is exacerbated because he likewise failed to raise it in his pre-argument appellate briefing. Such omissions are costly to an appellant. <u>See</u> <u>Lattab</u> v. <u>Ashcroft</u>, 384 F.3d 8, 17 (1st Cir. 2004) (explaining that an appellant may not raise new points of law for the first time in a post-argument brief); <u>United States</u> v. <u>Dietz</u>,

---

[7]Pacheco also suggests that the sentencing court's findings of drug quantity, used to calculate his base offense level, <u>see</u> USSG §2D1.1(c)(2), are similarly infirm. The drug quantity finding was not challenged below or in Pacheco's opening brief, so we reject that suggestion based on the same reasoning that undergirds our rejection of his argument against the role-in-the-offense enhancement. <u>See</u> text <u>infra</u>.

[8]The fact that <u>Blakely</u> had not been decided at that time does not excuse this default. The Supreme Court's decision in <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466, 490 (2000), foreshadowed the argument; and, in all events, the prospect of an adverse ruling does not relieve a party of the duty of lodging a contemporaneous objection. <u>See</u>, <u>e.g.</u>, <u>Derman</u> v. <u>United States</u>, 298 F.3d 34, 44 (1st Cir.) (explaining that appellant's failure to raise an <u>Apprendi</u> objection before the trial court violated "the general rule that a criminal defendant must seasonably advance an objection to a potential constitutional infirmity in order to preserve the point for collateral attack"), <u>cert.</u> <u>denied</u>, 537 U.S. 1048 (2002).

-24-

950 F.2d 50, 55 (1st Cir. 1991) (explaining that sentencing objections "not seasonably addressed to the trial court may not be raised for the first time in an appellate venue").

It is debatable whether these omissions, collectively, constitute a waiver or, instead, are merely a forfeiture. See United States v. Morgan, 384 F.3d 1, 7-8 (1st Cir. 2004) (discussing this question); see also United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) (spelling out the different consequences of waiver and forfeiture vis-à-vis appellate review), cert. denied, 538 U.S. 937 (2003). We need not make so fine a distinction today. Assuming arguendo, favorably to Pacheco, that the plain error standard applies, he is nonetheless ineligible for relief.[9]

The substantive standards for plain error review are difficult to satisfy. We will only reverse the trial court's decision if a defendant demonstrates "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."

---

[9]In his supplemental brief, Pacheco claims that the putative Blakely error was preserved (and, therefore, that the error engenders de novo review). The record belies that claim: at no point during the sentencing proceedings did Pacheco object to the role-in-the-offense enhancement or to the determination of drug quantity on any ground that anticipates, or even remotely resembles, the Blakely rationale.

-25-

United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). We find no plain error here. Our conclusion rests on two bases.

The first involves timing. The district court sentenced Pacheco on November 26, 2002. That was almost nineteen months before the Supreme Court decided Blakely. Circuit precedent in force at the time of Pacheco's sentencing, in line with the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), provided that an aggravating sentencing factor did not need to be presented to a jury or proven beyond a reasonable doubt so long as the resulting sentence did not exceed the statutory maximum. See United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001) (holding that, within these parameters, Apprendi permits an upward adjustment for a defendant's role in a drug-trafficking conspiracy). Here, the underlying offense carries a maximum sentence of life in prison. See 21 U.S.C. § 841(b)(1)(A). Whether Blakely has fatally undermined this line of authority is an unsettled question at the moment and, whatever the ultimate outcome, the answer is neither clear nor obvious. See United States v. Cordoza-Estrada, ___ F.3d ___, ___ (1st Cir. 2004) [No. 03-2666, slip op. at 9] (per curiam). Accordingly, we cannot find that the district court committed plain error when it sentenced Pacheco on the basis, in part, of an upward role-in-the-offense adjustment. See Morgan, 384 F.3d at 8.

The second reason why there is no plain error involves the fourth prong of the plain error test: any bevue in failing to submit the role-in-the-offense issue to the jury did not seriously affect the fairness of the proceedings. See United States v. Cotton, 535 U.S. 625, 631-32 (2002); Johnson v. United States, 520 U.S. 461, 469-70 (1997). We reach this conclusion because the transcript of the disposition hearing is utterly devoid of any attack either on the Probation Department's recommendation that an upward role-in-the-offense adjustment be imposed or on the district court's determination that Pacheco was the organizer of the enterprise (and, thus, was deserving of such an adjustment). To cinch matters, the facts of record, including Ramírez's identification of Pacheco both as an "owner" of the drugs and as the de facto tour director for the group's air travel, strongly support the conclusion that Pacheco was a driving force in the conspiracy. Under these circumstances, any error (assuming that one occurred) cannot be classified as plain. See United States v. Savarese, ___ F.3d ___, ___ (1st Cir. 2004) [No. 04-1099, slip op. at 16-17].

## V. CONCLUSION

We need go no further. We conclude that the evidence presented at trial supports the jury's verdict; that the appellants' claims of reversible error, insofar as they relate to the district court's evidentiary rulings, lack force; and that the

unpreserved claim of <u>Blakely</u> error does not afford Pacheco a cognizable basis for relief. Consequently, we affirm the appellants' convictions and sentences.

**<u>Affirmed</u>**.