# United States Court of Appeals

## For the First Circuit

No. 04-1340

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS MARES, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Dyk,* Circuit Judge.

Thomas F. McGuire, on brief, for appellant.
Virginia M. Vander Jagt, Assistant United States Attorney,
with whom Michael J. Sullivan, United States Attorney, were on
brief, for appellee.

November 3, 2005

---

* Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.   Police officers arrested Defendant Carlos Mares, Jr. ("Defendant"), for crimes related to the sale of heroin.  Defendant moved to suppress evidence found in his bedroom after his parents consented to a search of their house, and the district court denied the motion.  Defendant pleaded guilty but reserved the right to appeal the denial of his motion to suppress.  In this appeal, we consider whether the district court properly denied his motion to suppress.  We affirm the district court's decision.

## I.

On November 20, 2001, the police department in Holyoke, Massachusetts received a tip from an informant that drug dealers were selling heroin in a public park and that a man named Carlos was distributing heroin to the dealers from a house at 611 South Summer Street in Holyoke.  Based upon information received from the informant, the police set up surveillance of the public park.  They observed what they believed to be drug transactions, and they confirmed this by confronting a suspected buyer, who admitted to purchasing heroin in the park.  The police followed the dealer to 611 South Summer Street and observed him enter the house and leave a few minutes later.  The police confronted the dealer, who consented to a search, which revealed 50 packets of heroin.

The police then entered the house at 611 South Summer Street without obtaining a search warrant.  The officers spoke with

-2-

Mrs. María Pérez ("Mrs. Pérez"), Defendant's mother, and Mr. Carlos Mares, Sr. ("Mr. Mares"), Defendant's father. Mrs. Pérez signed a consent form to allow the officers to search the house. The officers entered Defendant's room and saw $1,840 in cash in plain view. An officer then went into the closet and felt a closed knapsack. The officer believed that weapons were inside, and he opened the knapsack to find 750 packets of heroin and three firearms. The officers then arrested Defendant.

The parties contest the events surrounding the police entry into the house and the solicitation of Mrs. Pérez's consent. According to Defendant, the police forcefully entered the house and coerced Mrs. Pérez into signing the consent form. Defendant claims that his sister answered the door and that the police pushed her inside so that they could enter the house. Defendant maintains that the police then threatened Mrs. Pérez, saying that they would arrest everyone in the house if she did not sign the form granting consent to search the house, and that Mrs. Pérez signed the consent form because of this threat.

According to the Government, the officers entered the house without objection, and the consent to search was freely given. The Government states that the young woman who answered the door stepped back, which the police took to be an implicit consent to enter. About six people, none of them Mrs. Pérez or Mr. Mares, were in the living room making comments to the police such as

"leave" and "you need a warrant." The government asserts that an officer yelled to the six people in the living room to be quiet or else they would be arrested. The police explained the consent form to Mr. Mares and Mrs. Pérez, and Mr. Mares explained the consent form to Mrs. Pérez in Spanish. Mrs. Pérez signed the form, and Mr. Mares orally consented to the search. Defendant never objected to the consent granted by his parents.

After the arrest, Mrs. Pérez and Mr. Mares drove to the police station. Mr. Mares gave a signed statement to police describing what happened prior to the search: "The detectives asked if they could search the house, and if I would sign a paper giving permission to search. My wife signed and gave a permission to search." Mrs. Pérez was present and did not object to the statement signed by Mr. Mares.

Defendant was charged in a three-count indictment. Count I charged him with conspiracy to possess with intent to distribute heroin, Count II charged him with possession with intent to distribute heroin, and Count III charged him with possession of a firearm in furtherance of a drug trafficking crime.

Defendant moved to suppress the evidence seized from his bedroom, and the district court held a suppression hearing on January 17, 2003. Three witnesses testified for Defendant, and four officers testified for the Government. The court found that the defense witnesses lacked credibility. The court further found

that the officers entered the house lawfully with the consent of the person who answered the door and that Mrs. Pérez voluntarily signed the consent form. The court denied Defendant's motion to suppress the evidence seized in his bedroom.

Defendant pleaded guilty to Counts II and III of the indictment but reserved his right to appeal the denial of his motion to suppress. As part of the agreement, the Government dismissed Count I of the indictment.

## II.

Defendant raises three arguments on appeal. The first argument is that the police officers did not have probable cause to enter and search the apartment. The second argument is that there were no exigent circumstances to justify the warrantless entry and search. The third argument is that the officers coerced Mrs. Pérez into consenting to the search of the house.

Defendant's first two arguments are simply irrelevant. The court below found that "the officers entered the house lawfully with the consent of someone whom they reasonably perceived to be an occupant and remained inside with the implicit permission of Mrs. Pérez." The court also found that Mrs. Pérez and Mr. Mares voluntarily consented to the search of their home. Once such consent has been freely given, the police do not need probable cause or a search warrant to search the home. See Schneckloth v. Bustamonte, 412 U.S. 218, 227-28 (1973). Since a search warrant

was not necessary, the Government does not need to show any exigent circumstances. See Soldal v. Cook County, 506 U.S. 56, 65-66 (1992).

Defendant's final argument is that the officers coerced Mrs. Pérez into consenting to the search of her house. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227. The district court considered the testimony of witnesses on behalf of both parties and found that Mrs. Pérez's consent was voluntary. There is no contention that Mrs. Pérez lacked authority to consent to the search. "[W]e must accept the district court's findings of fact unless those findings are shown to be clearly erroneous." United States v. Laine, 270 F.3d 71, 74 (1st Cir. 2001).

In support of his argument that the officers coerced Mrs. Pérez into giving consent, Defendant merely restates his version of the facts and makes no attempt to show that the district court's findings of fact were clearly erroneous. From our own examination of the record, we find the district court's findings of fact to be well supported. Mrs. Pérez, Mr. Mares, Benito Morales, and Michele Mares testified on behalf of the Defendant. The court amply explained why it discredited the testimony of the defense witnesses. We will briefly enumerate here just a few of the

district court's reasons: (1) Mrs. Pérez contradicted her own testimony on the stand, and the logic of her story was faulty; (2) Mr. Mares's testimony contradicted the statement he signed at the police station after Defendant was arrested; (3) Benito Morales "offered an incoherent story and retracted some of his just-elicited narrative in favor of another version"; and (4) Michele Mares's testimony was inconsistent with that of the other defense witnesses and the police officers. Defendant does not even attempt to discredit the testimony of the officers, and nothing in the record gives us any reason to discredit the officers' testimony. We therefore find no error in the factual findings of the district court.

## III.

For the foregoing reasons, the district court's decision is affirmed.

**<u>Affirmed</u>**.